# GOVERNMENT'S EXHIBIT 1



DISTRICT OF COLUMBIA, ss:

## DECLARATION OF JULIE B. MARTIN

I, Julie B. Martin, declare and say as follows:

1. I am an Attorney Adviser in the Office of the Legal Adviser for the Department of State, Washington, DC. This office has responsibility for extradition requests, and I am charged with the extradition case of Robert Lukasz Zendran. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. In accordance with the provisions of the extradition treaty in full force and effect between the United States and Poland, the Embassy of Poland has submitted Diplomatic Note No. 35-32-2012, dated November 2, 2012, formally requesting the extradition of Robert Lukasz Zendran, supplemented by a January 23, 2014 letter from the Ministry of Justice of Poland to the United States Department of Justice. Copies of the diplomatic note and letter are attached to this declaration.

3. The relevant and applicable treaty provisions in full force and effect between the United States and Poland are found in the Extradition Treaty between the United States of America and the Republic of Poland signed July 10, 1996, and the Agreement between the United States of America and the Republic of Poland on the application of the Extradition Treaty between the United States of America and the Republic of Poland signed July 10, 1996, pursuant to Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington June 25, 2003 (the "Agreement"), with Annex, signed June 9, 2006. The Annex to the Agreement (the "Annex") reflects the integrated text of the

-2-

provisions of the 1996 U.S.-Poland Extradition Treaty and the U.S.-EU Extradition Agreement.  A copy of the Agreement and Annex are attached to this declaration.

4.  In accordance with Article 22 of the Annex, the Government of the United States of America provides legal representation in U.S. courts for the Government of Poland in its extradition requests, and the Government of Poland provides legal representation in its courts for extradition requests made by the United States.

5.  The offenses for which extradition is sought are covered under Article 2 of the Annex.

6.  Under Article 10 of the Annex, documents that bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State are admissible in extradition proceedings without further certification, authentication or other legalization.  Such documents satisfy the authentication requirements of Article 10 without the need for certification by the U.S. Embassy in Warsaw.  Poland, in submitting documents in the instant case that bear the certificate or seal of the Ministry of Justice has complied with the authentication requirements of Article 10.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on June 3, 2015.

JULIE B. MARTIN

Attachments:
    1.  Copy of Note and Letter
    2 .  Copy of Agreement with Annex

15037810-9

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

...tify That Julie B. Martin, whose name is subscribed to the document hereunto annexed, was at ...of subscribing the same Attorney Adviser, Office of the Legal Adviser, Department of State, ...ates of America, and that full faith and credit are due to her acts as such.

*...his certificate is not valid if it is removed or altered in any way whatsoever*

In testimony whereof, I, John F. Kerry, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this third day of June, 2015.

*John F. Kerry*

Secretary of State

By *VMatthews*

Assistant Authentication Officer,
Department of State

*Issue... ...ant to CHXIV,... ...of Sept. ... ...89, 1 Stat. 68... ...2 USC ... 22USC 2651a;... ...301;... ... 1733 et. seq.;... 1443...E 44 Federal R...Civil F... ...ure.*

No 35-32-12

    The Embassy of the Republic of Poland presents its compliments to the United States Department of State and in accordance with the Treaty of Extradition between the Republic of Poland and the United States of America has the honor to request the extradition of Robert Łukasz Zendran, born on March 8, 1968 in Legnica, Poland. He was charged with the crime of assault and robbery in Poland.

    The offenses Robert Łukasz Zendran was convicted of correspond with article 2 of the Treaty of Extradition between the Republic of Poland and the United States of America.

    The Minister of Justice of the Republic of Poland issued the extradition request.

    The Embassy of the Republic of Poland avails itself of this opportunity to renew to the United States Department of State the assurances of its highest consideration.

    Enclosures: Documents supporting the extradition request.

U.S. Department of State

W a s h i n g t o n, D. C.



Washington, DC, November 2, 2012



MINISTERSTWO SPRAWIEDLIWOŚCI
Departament Współpracy Międzynarodowej
I Praw Człowieka
00 - 950 Warszawa, Al. Ujazdowskie 11
Tel/fax: (+ 48 22) 6280949

DWMPC II 073 – 156 / 12 / 12
PG V Oz  1990 / 10 / E
Please quote our ref. when responding

Warszawa,  January 23, 2014

U.S. Department of Justice
Criminal Division
Office of International Affairs
1301 New York Avenue NW
Washington, DC 20530

Extradition Treaty between the Republic of Poland and the United States of America signed
in Washington on July 10, 1996.
Extradition of a Polish citizen Robert  ZENDRAN from the United States to Poland
Your reference 95 -100 – 22482

Dear Ms. Warlow,

With reference to the request of the District Public Prosecutor's Office in Gdańsk for extradition from the United
States of a Polish citizen Robert ZENDRAN the Ministry of Justice of the Republic of Poland - acting as an
executive authority pursuant to Article 25 of the Treaty - kindly sends enclosed the additional documents
prepared by the requesting authority, which were requested in your aforementioned letter. The documents
have been authorised by the Polish Ministry of Justice according to the aforementioned Extradition Treaty.

Sincerely yours,

Head of Division
Katarzyna Biernacka

Cc:
General Prosecutor's Office
Department of International Cooperation
Ref. PG V Oz 1990 / 10 / E

95-100-22482

| 105TH CONGRESS 1st Session | SENATE | TREATY DOC. 105–14 |
|---|---|---|

## EXTRADITION TREATY WITH POLAND

---

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMER-ICA AND THE REPUBLIC OF POLAND, SIGNED AT WASHINGTON ON JULY 10, 1996



JULY 9, 1997.—Treaty was read the first time and, together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

---

U.S. GOVERNMENT PRINTING OFFICE

WASHINGTON : 1997

39–118

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *July 9, 1997.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Extradition Treaty between the United States of America and the Republic of Poland, signed at Washington on July 10, 1997.

In addition, I transmit, for the information of the Senate, the report of the Department of State with respect to the Treaty. As the report explains, the Treaty will not require implementing legislation.

This Treaty will, upon entry into force, enhance cooperation between the law enforcement communities of both countries. It will thereby make a significant contribution to international law enforcement efforts.

The provisions in this Treaty follow generally the form and content of extradition treaties recently concluded by the United States.

I recommend that the Senate give early and favorable consideration to the Treaty and give its advice and consent to ratification.

WILLIAM J. CLINTON.

(III)

# LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, June 13, 1997.*

The PRESIDENT,
*The White House.*

I have the honor to submit to you the Extradition Treaty between the United States of America and the Republic of Poland ("the Treaty"), signed in Washington on July 10, 1996. I recommend that the Treaty be transmitted to the Senate for its advice and consent to ratification.

The Treaty follows closely the form and content of extradition treaties recently concluded by the United States in most respects. The Treaty represents part of a concerted effort by the Department of State and the Department of Justice to develop modern extradition relationships to enhance the United States ability to prosecute serious offenders including, especially, narcotics traffickers and terrorists.

The Treaty marks a significant step in bilateral cooperation between the United States and Poland. Upon entry into force, it will replace the Extradition Treaty and Accompanying Protocol between the United States and Poland that was signed at Warsaw on November 22, 1927, and entered into force on July 6, 1929, and the Supplementary Extradition Treaty signed at Warsaw on April 5, 1935, and entered into force on June 5, 1936. Those treaties have become outmoded, and the new Treaty will provide significant improvements. The Treaty does not require implementing legislation.

Article 1 obligates each Contracting State to extradite to the other, pursuant to the provisions of the Treaty, any person whom the Authorities in the Requesting State seek for prosecution or have found guilty of an extraditable offense.

Article 2(1) defines an extraditable offense as one punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year, or by a more severe penalty. Use of such a "dual criminality" clause rather than a list of offenses covered by the Treaty obviates the need to renegotiate or supplement the Treaty as additional offenses become punishable under the laws of both Contracting States.

Article 2(2) specifies that an extraditable offense also includes an attempt to commit or participation in the commission of an offense, or a conspiracy to commit (under United States law) or any type of association to commit (under Polish law) an offense as described in Article 2(1). Additional flexibility is provided by Article 2(3), which provides that an offense shall be considered an extraditable offense: (1) whether or not the laws in the Contracting States place

(V)

VI

the offense within the same category of offenses or describe the offense by the same terminology; or (2) whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

With regard to offenses committed outside the territory of the Requesting State, Article 2(4) provides the executive authority of the Requested State with discretion to grant or deny extradition if the offense for which extradition is sought would not be punishable under the laws of the Requested State in similar circumstances. Many United States criminal statutes have extraterritorial application, and the United States frequently makes requests for fugitives whose criminal activity occurred in foreign countries with the intent, actual or implied, of affecting the United States. Poland did not indicate that it anticipated any difficulty with this provision.

Article 2(5) provides that, if extradition has been granted for an extraditable offense, it shall also be granted for any other offense requested, provided that all other requirements for extradition are met, even if the latter offense is punishable by deprivation of liberty for one year or less.

Article 3 includes as extraditable offenses under the Treaty an offense in connection with taxes, duties, international transfers of funds, and importation, exportation, and transit of goods, even if the Requested State does not require the same type of fee or tax or if it does not regulate fees, taxes, duties, transit of goods, and currency transactions in the same manner as the Requesting State.

Article 4(1) provides that neither Contracting State shall be required to extradite its nationals, but the Executive Authority of the Requested State shall have the discretionary power to do so.

Article 4(2) requires the Requested State, if it refuses extradition solely on the basis of the nationality of the person sought, to submit the case to its competent authorities for a decision as to prosecution.

As is customary in extradition treaties, Article 5 incorporates a political and military offenses exception to the obligation to extradite. Article 5(1) states generally that extradition shall not be granted for an offense of a political character.

Article 5(2) specifies several categories of offenses that shall not be considered to be offenses of a political character:

(a) murder or other willful crime against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

(b) an offense for which both Contracting States are obliged pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for a decision as to prosecution;

(c) murder, manslaughter, malicious wounding, or inflicting grievous bodily harm or other grievous injury to health;

(d) an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage;

VII

    (e) placing or using an explosive, incendiary or destructive device capable of endangering life, of causing substantial bodily harm, or of causing substantial property damage; and

    (f) an attempt to commit, or participation in the commission of, any of the foregoing offenses, as well as an association to commit these offenses as provided by the laws of Poland, or conspiracy to commit these offenses as provided by the laws of the United States.

The Treaty's political offense exception is substantially identical to that contained in several other modern extradition treaties including the treaty with Hungary, which entered into force on March 18, 1997. Offenses covered by Article 5(2)(b) include:

    Aircraft hijacking covered by The Hague Convention for the Suppression of Unlawful Seizure of Aircraft, done at The Hague December 16, 1970, and entered into force October 14, 1971 (22 U.S.T. 1641; TIAS No. 7192); and,

    Aircraft sabotage covered by the Montreal Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation, done at Montreal September 23, 1971, and entered into force January 26, 1973, (24 U.S.T. 564; TIAS No. 7570).

Article 5(3) provides that extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

Article 5(4) permits the Requested State to deny extradition for military offenses that are not offenses under ordinary criminal law (for example, desertion).

Article 6(1) permits the Requested State to refuse extradition when an offense is punishable by death under the laws in the Requesting State but not under the laws of the Requested State, unless the Requesting State provides the assurance that the death penalty will not be imposed or, if imposed, will not be carried out. Article 6(2) declares that the death penalty, if imposed by the courts of the Requesting State, shall not be carried out in cases where the Requesting State has provided an assurance in accordance with Article 6(1).

Article 7 bars extradition when the person sought has been tried and convicted or acquitted with final and binding effect in the Requested State for the same offense.

Article 7(2), however, declares that extradition is not barred if the competent authorities in the Requested State have declined to prosecute for the offenses for which extradition is requested or have decided to discontinue criminal proceedings against the person sought for those offenses.

Article 8 provides that extradition shall not be granted when prosecution or execution of a sentence has become barred by the statute of limitations of the Requesting State.

Article 9 establishes the procedures and describes the documents that are required to support an extradition request. Article 9(1) requires that all requests be submitted through the diplomatic channel. Article 9(3)(c) provides that a request for the extradition of a person sought for prosecution be supported by evidence justifying committal for trial if the offense had been committed in the Requested State.

VIII

Article 10 establishes the procedures under which documents submitted pursuant to the provisions of this Treaty shall be received and admitted into evidence.

Article 11 requires that all documents submitted by the Requesting State be translated into the language of the Requested State.

Article 12 sets forth procedures for the provisional arrest and detention of a person sought pending presentation of the formal request for extradition. Article 12(4) provides that if the Requested State's executive authority has not received the request for extradition and supporting documentation within sixty days after the provisional arrest, the person must be discharged from custody. Article 12(5) provides explicitly that discharge from custody pursuant to Article 12(4) does not prejudice subsequent rearrest and extradition of that person upon later delivery of the extradition request and supporting documents.

Article 13 provides that the Requested State may request that a Requesting State supplement a request for extradition if the Requested State considers that the information furnished in support of a request for extradition is not sufficient to fulfill the Treaty requirements.

Article 14 specifies the procedures governing surrender and return of persons sought. It requires the Requested State to provide prompt notice to the Requesting State regarding its decision on the request for extradition. If the request is denied in whole or in part, Article 14(2) requires the Requesting State to provide information regarding the reasons therefor. If extradition is granted, the person sought must be removed from the territory of the Requested State within the time prescribed by its law or, if the law does not provide a specific time for surrender, within 30 days from the date on which the Requesting State is notified.

Article 15 permits refusal of an extradition request for a person convicted in absentia, if the executive authority of the Requested State determines that the proceedings did not ensure the minimum right to defense to which the person is entitled. Extradition may be granted, however, if the Requesting State supplies a guarantee deemed adequate by the Requested State that the case will be reopened with a guaranteed right of defense.

Article 16 concerns temporary and deferred surrender. Article 16(1) states that, if the extradition request is granted for a person being prosecuted for an offense other than that for which extradition is sought or is serving a sentence in the territory of the Requested State, that State may temporarily surrender the person to the Requesting State solely for the purpose of prosecution. Alternatively, Article 16(2) provides that the Requested State may postpone the extradition proceedings until its prosecution has been concluded and the sentence has been served.

Article 17 sets forth a non-exclusive list of factors to be considered by the Requested State in determining to which State to surrender a person sought by more than one State.

Article 18(1) provides for the seizure and surrender to the Requesting State of property connected with the offense for which extradition is granted, to the extent permitted under the law of the Requested State. Such property may be surrendered even when extradition cannot be effected due to the death, disappearance, or es-

cape of the person sought. In accordance with Article 18(2), surrender of property may be deferred if it is needed as evidence in the Requested State and may be conditioned upon satisfactory assurances that it will be returned. Article 18(3) imposes an obligation to respect the rights of third parties in affected property.

Article 19 sets forth the rule of speciality. Article 19(1) provides, subject to specific exceptions, that a person extradited under the Treaty may not be detained, tried, or punished for an offense committed prior to extradition other than that for which extradition has been granted, unless a waiver of the rule is granted by the executive authority of the Requested State. Similarly, under Article 19(2), the Requesting State may not extradite such person to a third State for an offense committed prior to the original surrender unless the Requested State consents. However, Article 19(3) makes clear that these restrictions do not apply if the extradited person leaves the Requesting State after extradition and voluntarily returns to it or fails to leave the Requesting State within thirty days of being free to do so.

Article 20 permits surrender to the Requesting State without further proceedings if the person sought provides written consent thereto. The Rule of Specialty set out in Article 19 will not apply to a waiver.

Article 21 governs the transit through the territory of one Contracting State of a person being surrendered to the other State by a third State.

Article 22 contains provisions on representation and expenses that are similar to those found in other modern extradition treaties. Specifically, the Requested State is required to represent the interests of the Requesting State in any proceedings arising out of a request for extradition. The Requesting State is required to bear the expenses related to the translation of documents and the transportation of the person surrendered. Article 22(3) clarifies that neither State shall make any pecuniary claim against the other State arising out of extradition procedures under the Treaty.

Article 23 states that the United States Department of Justice and the Ministry of Justice of Poland may consult with each other directly or through the facilities of INTERPOL in connection with the processing of individual cases and in furtherance of maintaining and improving Treaty implementation procedures. In addition, the Requesting State is required, when requested by the Requested State, to inform the Requested State of the status of criminal proceedings against persons who have been extradited.

Article 24, like the parallel provision in almost all recent United States extradition treaties, states that the Treaty shall apply to offenses committed before as well as after the date the Treaty enters into force, with certain qualifications.

Article 25 identifies the executive authorities for each Party, the Secretary of State for the United States and the Minister of Justice-Attorney General for Poland, or a person designated by the respective executive authorities.

Ratification and entry into force are addressed in Article 26. That Article provides that the Parties shall exchange instruments of ratification at Warsaw and that the treaty shall enter into force 30 days after the exchange of instruments of ratification. Upon

x

entry into force of this Treaty, the 1927 Extradition Treaty between the United States and Poland, as supplemented in 1935, shall cease to have effect between the United States and Poland, with certain noted exceptions.

Under Article 27, either Contracting State may terminate the Treaty at any time upon written notice to the other Contracting State, with termination to become effective six months after the date of receipt of such notice.

A Technical Analysis explaining in detail the provisions of the Treaty is being prepared by the United States negotiating delegation and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Treaty by the Senate at an early date.

Respectfully submitted.

MADELEINE ALBRIGHT.

EXTRADITION TREATY

BETWEEN

THE UNITED STATES OF AMERICA

AND

THE REPUBLIC OF POLAND

(1)

2

The United States of America and the Republic of Poland;

Recalling the Extradition Treaty and accompanying Protocol between the United States of America and the Republic of Poland signed at Warsaw November 22, 1927 and the Supplementary Extradition Treaty signed at Warsaw April 5, 1935; and

Desiring to provide for more effective cooperation between the two States in the suppression of crime and to facilitate the relations between the two States in the area of extradition by concluding a new treaty for the extradition of offenders;

Have agreed as follows:

3

- 2 -

### Article 1
#### Obligation to Extradite

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the authorities in the Requesting State seek for prosecution or have found guilty of an extraditable offense.

### Article 2
#### Extraditable Offenses

1. An offense shall be an extraditable offense if it is punishable under the laws in both Contracting States by deprivation of liberty for a maximum period of more than one year or by a more severe penalty.

2. An offense shall also be an extraditable offense if it consists of an attempt to commit, or participation in the commission of, an offense described in paragraph 1 of this Article. Any type of association to commit offenses described in paragraph 1 of this Article, as provided by the laws of Poland, and conspiracy to commit an offense described in paragraph 1 of this Article, as provided by the laws of the United States, shall also be extraditable offenses.

3. For the purposes of this Article, an offense shall be an extraditable offense:

(a)  whether or not the laws in the Contracting States place the offense within the same category of offenses or describe the offense by the same terminology; or

(b)  whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

4

- 3 -

4. If the offense has been committed outside the territory of the Requesting State, extradition shall be granted if the laws in the Requested State provide for the punishment of an offense committed outside its territory in similar circumstances.  If the laws in the Requested State do not so provide, the executive authority of the Requested State may, in its discretion, grant extradition.

5. If extradition has been granted for an extraditable offense, it shall also be granted for any other offense specified in the request, even if the latter offense is punishable by deprivation of liberty for one year or less, provided that all other requirements for extradition are met.

### Article 3
### Fiscal Offenses

An offense shall also be an extraditable offense if it consists of an offense in connection with taxes, duties, international transfers of funds, and importation, exportation, and transit of goods, even if the law of the Requested State does not require the same type of fee or tax or does not regulate fees, taxes, transit of goods, and currency transactions in the same manner as the law of the Requesting State.

### Article 4
### Nationality

1. Neither Contracting State shall be bound to extradite its own nationals, but the Executive Authority of the Requested State shall have the power to extradite such persons if, in its discretion, it be deemed proper and possible to do so.

2. If extradition is refused solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its competent authorities for a decision as to prosecution.

- 4 -

Article 5

Political and Military Offenses

1.  Extradition shall not be granted if the offense for which extradition is requested is an offense of a political character.

2.  For the purposes of this Treaty, the following offenses shall not be considered to be of a political character:

(a)    murder or any other offense against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

(b)    an offense for which both Contracting States have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution; and

(c)    murder, manslaughter, malicious wounding, or inflicting grievous bodily harm or other grievous injury to health;

(d)    an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage;

(e)    placing or using an explosive, incendiary or destructive device capable of endangering life, of causing substantial bodily harm, or of causing substantial property damage; and,

(f)    an attempt to commit, or participation in the commission of, any of the foregoing offenses, as well as an association to commit these offenses as provided by the laws of Poland, or conspiracy to commit these offenses as provided by the laws of the United States.

3.  Notwithstanding paragraph 2 of this Article, extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

- 5 -

4. The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.

Article 6

Capital Punishment

1. When the offense for which extradition is sought is punishable by death under the laws in the Requesting State and is not punishable by death under the laws in the Requested State, the Requested State may refuse extradition unless the Requesting State, if so requested, provides assurances that the death penalty will not be imposed or, if imposed, will not be carried out.

2. In instances in which a Requesting State provides an assurance in accordance with paragraph 1 of this Article, the death penalty, if imposed by the courts of the Requesting State, shall not be carried out.

Article 7

Prior Prosecution

1. Extradition shall not be granted when the person sought has been convicted or acquitted with final and binding effect in the Requested State for the offense for which extradition is requested.

2. Extradition shall not be precluded by the fact that the competent authorities in the Requested State have decided either:

(a)    not to prosecute the person sought for the acts for which extradition is requested; or

(b)    to discontinue any criminal proceedings which have been instituted against the person sought for those acts.

7

- 6 -

### Article 8
### Lapse of Time

Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the law of the Requesting State.

### Article 9
### Extradition Procedures and Required Documents

1. A request for extradition shall be submitted through the diplomatic channel.
2. A request for extradition shall be supported by:
   (a)   documents, statements, or other types of information which describe the identity, nationality, and probable location of the person sought;
   (b)   information describing the facts of the offense and the procedural history of the case;
   (c)   the text of the law describing the essential elements of the offense for which extradition is requested;
   (d)   the text of the law prescribing the punishment for the offense;
   (e)   a statement of the provisions of law describing any time limit on the prosecution or enforcement of the penalty for the offense for which extradition has been sought; and
   (f)   the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.
3. A request for extradition of a person who is sought for prosecution shall also be supported by:

8

- 7 -

(a)  a copy of the warrant or order of arrest, if any, issued by a
judge or other competent authority;

(b)  a copy of the charging document, if any; and

(c)  such information as would justify the committal for trial of
the person if the offense had been committed in the
Requested State.

4.  A request for extradition relating to a person who has been found guilty of the
offense for which extradition is sought shall also be supported by:

(a)  a copy of the warrant or order of arrest, if any, issued by a
judge or other competent authority;

(b)  a copy of the judgment of conviction or, if such copy is not
available, a statement by a judicial authority that the person
has been found guilty;

(c)  information establishing that the person sought is the person
to whom the finding of guilt refers;

(d)  a copy of the sentence imposed, if the person sought has been
sentenced, and a statement establishing to what extent the
sentence has been carried out; and

(e)  in the case of a person who has been convicted in absentia,
the documents required in paragraph 3.

Article 10

Admissibility of Documents

The documents which accompany an extradition request shall be received and
admitted as evidence in extradition proceedings if:

(a)  in the case of a request from the United States, they are
certified by the proper diplomatic or consular representative
of the Republic of Poland in the United States;

- 8 -

(b)    in the case of a request from the Republic of Poland, they are
       certified by the principal diplomatic or consular officer of the
       United States resident in the Republic of Poland, as provided
       by the extradition laws of the United States; or

(c)    they are certified or authenticated in any other manner
       accepted by the law of the Requested State.

### Article 11
### Translation

All documents submitted by the Requesting State shall be translated into the
language of the Requested State.

### Article 12
### Provisional Arrest

1. In case of urgency, a Contracting State may apply for the provisional arrest of
the person sought before the request for extradition is submitted. An application for
provisional arrest may be transmitted through the diplomatic channel or directly between
the United States Department of Justice and the Ministry of Justice of the Republic of
Poland. The facilities of the International Criminal Police Organization (INTERPOL)
may be used to transmit such a request.

2. The application for provisional arrest shall contain:

(a)    a description of the person sought and information
       concerning the person's nationality;

(b)    the location of the person sought, if known;

(c)    a brief statement of the facts of the case, including, if possible,
       the time and location of the offense;

(d)    a description of the laws violated;

- 9 -

(e)    a statement of the existence of either:

    (i)    a warrant of arrest for a person sought for prosecution or already found guilty but not yet sentenced, or

    (ii)    a judgment of conviction against a person sought for the enforcement of a sentence; and

(f)    a statement that a request for extradition for the person sought will follow.

3. The Requesting State shall be notified without delay of the disposition of its application and the reasons for any denial.

4. A person who is provisionally arrested shall be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the supporting documents required in Article 9.

5. The fact that the person sought has been discharged from custody pursuant to paragraph (4) of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

### Article 13
### Additional Information

If the Requested State considers that the information furnished in support of a request for extradition is not sufficient to fulfill the requirements of this Treaty, that State may request that additional information be furnished within such a reasonable length of time as it specifies. Such additional information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of Poland or through the diplomatic channel.

- 10 -

## Article 14

### Decision and Surrender

1. The Requested State shall promptly notify the Requesting State of its decision on the request for extradition.

2. If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3. If the request for extradition is granted, the authorities of the Contracting States shall agree on the time and place for the surrender of the person sought.

4. Surrender of the person sought shall take place within such time as may be prescribed by the laws of the Requested State.' If the law of the Requested State does not provide a specific time for surrender, it shall take place within thirty (30) days from the date on which the Requesting State is notified of the decision to extradite.

5. If the person sought is not removed from the territory of the Requested State within the time required under paragraph (4), he may be set at liberty. The Requested State may subsequently refuse to extradite the person sought for the same offense.

6. If circumstances beyond its control prevent a Contracting State from timely surrendering or taking delivery of the person to be extradited, it shall notify the other Contracting State before the expiration of the time limit. In such a case the competent authorities of the Contracting States may agree upon a new date for the surrender.

## Article 15

### Convictions in Absentia

If a Contracting State has applied to the other State for extradition of a person convicted in absentia, the executive authority of the Requested State may refuse to surrender the person if it deems that the proceedings in absentia did not ensure the minimum right to defense to which the person charged is entitled. Extradition may be

12

- 11 -

effected, however, if the Requesting State guarantees, in a manner deemed adequate, that the case against the person whose extradition is requested will be reopened, with a guaranteed right of defense.

### Article 16
### Temporary and Deferred Surrender

1.  If the extradition request is granted in the case of a person who is being prosecuted for an offense other than that for which extradition is sought or is serving a sentence in the territory of the Requested State for an offense other than that for which extradition is sought, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by agreement of the Contracting States.

2.  The Requested State may postpone the extradition proceedings against a person who is being prosecuted for the same offense for which that person is sought or any other offense, or who is serving a sentence in that State for an offense other than that for which extradition is sought. The postponement shall continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

### Article 17
### Requests for Extradition Made by Several States

If the Requested State receives requests from the other Contracting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State it will surrender the person. In making its decision, the Requested State shall consider all relevant factors, including but not limited to:

13

- 12 -

(a)    whether the requests were made pursuant to treaty;

(b)    the place where each offense was committed;

(c)    the gravity of the offenses;

(d)    the nationality of the victim;

(e)    the possibility of further extradition between the Requesting States; and

(f)    the chronological order in which the requests were received from the Requesting States.

### Article 18
### Seizure and Surrender of Property

1. To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all articles, documents, and evidence connected with the offense in respect of which extradition is granted. The items mentioned in this Article may be surrendered, to the extent permitted under the law of the Requested State, even when extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2. The Requested State may condition the surrender of the property upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable. The Requested State may also defer the surrender of such property if it is needed as evidence in the Requested State.

3. The rights of third parties in such property shall be duly respected.

### Article 19
### Rule of Speciality

1. A person extradited under this Treaty may not be detained, prosecuted, sentenced, or punished in the Requesting State except for:

14

- 13 -

(a)   an offense for which extradition has been granted or a
differently denominated offense based on the same facts on
which extradition was granted, provided such offense is
extraditable or is a lesser form of such offense;

(b)   an offense committed after the extradition of the person; or

(c)   an offense for which the executive authority of the Requested
State has consented to the person's detention, prosecution,
sentencing, or punishment.  For the purpose of this
subparagraph:

    (i)   the Requested State may require the submission of the
documents specified in Article 9; and

    (ii)   unless the Requested State objects in writing, the
person extradited may be detained by the Requesting
State for ninety (90) days, or for such longer period of
time as the Requested State may authorize, while the
request is being processed.

2.  A person extradited under this Treaty may not be extradited to a third State for
an offense committed prior to the surrender unless the surrendering State consents.

3.  Paragraphs 1 and 2 of this Article shall not prevent the detention, prosecution,
sentencing, or punishment of an extradited person, or the extradition of that person to a
third State, if:

(a)   that person leaves the territory of the Requesting State after
extradition and voluntarily returns to it; or

(b)   that person does not leave the territory of the Requesting
State within thirty (30) days of the day on which that person
is free to leave.

15

- 14 -

Article 20

Simplified Extradition

If the extradition of a person sought to the Requesting State is not obviously precluded by the laws of the Requested State and provided the person sought irrevocably agrees in writing to his extradition after personally being advised by a judge or competent magistrate of his rights to formal extradition proceedings and the protection afforded by them that he would lose, the Requested State may surrender the person sought without a formal extradition proceeding having taken place. In this case Article 19 shall not be applicable.

Article 21

Transit

1. Either Contracting State may authorize transportation through its territory of a person surrendered to the other State by a third State. A request for transit shall be made through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Poland. The facilities of the International Criminal Police Organization (INTERPOL) may be used to transmit such a request. It shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit may be detained in custody during the period of transit.

2. No authorization is required where air transportation is being used by one Contracting State and no landing is scheduled on the territory of the other Contracting State. If an unscheduled landing occurs on the territory of the other Contracting State, that Contracting State may require the request for transit as provided in paragraph 1. That Contracting State may detain the person to be transported until the request for transit is received and the transit is effected, so long as the request is received within ninety-six (96) hours of the unscheduled landing.

- 15 -

### Article 22
#### Representation and Expenses

1. The Requested State shall assist, appear in court, and represent the interests of the Requesting State, in any proceeding arising out of a request for extradition.

2. The Requesting State shall bear the expenses related to the translation of documents and the transportation of the person surrendered. The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3. Neither State shall make any other pecuniary claim against the other State arising out of extradition procedures under this Treaty.

### Article 23
#### Consultation

1. The United States Department of Justice and Ministry of Justice of the Republic of Poland may consult with each other directly or through the facilities of INTERPOL in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

2. The Requesting State shall, at the request of the Requested State, inform the Requested State of the status of criminal proceedings against persons who have been extradited, and provide a copy of the final and binding decision if one has been issued in the case in question.

### Article 24
#### Application

This Treaty shall apply to offenses committed before as well as after the date it enters into force. If, however, an offense was committed before this Treaty enters into force and was not an offense under the laws of both Contracting States at the time of its

17

- 16 -

commission, the executive authority of the Requested State may, in its discretion, grant extradition.

## Article 25
### Executive Authorities

For the United States of America, the executive authority shall be the Secretary of State or a person designated by the Secretary of State. For Poland, the executive authority shall be the Minister of Justice-Attorney General or a person designated by the Minister of Justice-Attorney General.

## Article 26
### Ratification and Entry into Force

1. This Treaty shall be subject to ratification, and the instruments of ratification shall be exchanged at Warsaw as soon as possible.

2. This Treaty shall enter into force 30 days after the exchange of the instruments of ratification.

3. Upon the entry into force of this Treaty, the Treaty of Extradition between the United States of America and the Republic of Poland and Accompanying Protocol signed at Warsaw November 22, 1927, and the Supplementary Extradition Treaty signed at Warsaw April 5, 1935, shall cease to have effect between the United States of America and the Republic of Poland. Nevertheless, the 1927 Treaty, as supplemented in 1935, shall apply to any extradition proceedings in which extradition documents have already been submitted to the Requested State at the time this Treaty enters into force, except that Articles 2, 3, 5, 16, 19, and 20 of this Treaty shall be applicable to such proceedings. Article 19 of this Treaty shall apply to persons found extraditable under the prior Treaty.

18

- 17 -

Article 27

Termination

Either Contracting State may terminate this Treaty at any time by giving written notice to the other Contracting State, and the termination shall be effective six months after the date of the receipt of such notice.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments have signed this Treaty.

DONE at Washington, this tenth day of July, 1996, in duplicate, in the English and Polish languages, both texts being equally authentic.

FOR THE UNITED STATES OF AMERICA:      FOR THE REPUBLIC OF POLAND:

Agreement between the United States of America and the Republic of Poland
on the application of the Extradition Treaty between the United States
of America and the Republic of Poland signed 10 July 1996, pursuant to
Article 3(2) of the Agreement on Extradition between the United States
of America and the European Union signed at Washington 25 June 2003

The United States of America and the Republic of Poland (the "Contracting States" referred to in the Annex to this Agreement),

In view of Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington 25 June 2003,

Have agreed as follows:

Article 1

As contemplated by Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington 25 June 2003 (hereafter "the U.S.-EU Extradition Agreement"), the United States of America and the Republic of Poland acknowledge that, in accordance with the provisions of this Agreement, the bilateral Extradition Treaty between the United States of America and the Republic of Poland signed at Washington on 10 July 1996 (hereafter "the U.S.-Poland Extradition Treaty") is applied in relation to the U.S.-EU Extradition Agreement, under the following terms:

(a)     Article 6 of the Annex to this Agreement shall be applied in place of Article 6 of the U.S.-Poland Extradition Treaty, pursuant to Article 13 of the U.S.-EU Extradition Agreement;

(b)     Article 9(1) of the Annex to this Agreement shall be applied in place of Article 9(1) of the U.S.-Poland Extradition Treaty, pursuant to Article 5(1) of the U.S.-EU Extradition Agreement;

(c)     Article 9 bis of the Annex to this Agreement shall be applied to supplement the provisions of the U.S.-Poland Extradition Treaty, pursuant to Article 14 of the U.S.-EU Extradition Agreement;

(d)     Article 10 of the Annex to this Agreement shall be applied in place of Article 10 of the U.S.-Poland Extradition Treaty, pursuant to Article 5(2) of the U.S.-EU Extradition Agreement;

(e)     Article 12(4) of the Annex to this Agreement shall be applied to supplement the provisions of the U.S.-Poland Extradition Treaty, pursuant to Articles 5(1) and 7(1) of the U.S.-EU Extradition Agreement; the previous Article 12(4) and 12(5) shall be renumbered as Articles 12(5) and 12(6) respectively;

1



(f)     Article 17 of the Annex to this Agreement shall be applied in place of Article 17 of the U.S.-Poland Extradition Treaty, pursuant to Article 10 of the U.S.-EU Extradition Agreement;

(g)     In view of Articles 3 and 5 of this Agreement, Articles 24 and 26 of the U.S.-Poland Extradition Treaty shall be deleted. Accordingly, Article 25 of the U.S.-Poland Extradition Treaty shall be renumbered as Article 24 of the Annex, and Article 27 of the U.S.-Poland Extradition Treaty shall be renumbered as Article 25 of the Annex.

<u>Article 2</u>

The Annex reflects the integrated text of the provisions of the U.S.-Poland Extradition Treaty and the U.S.-EU Extradition Agreement as a result of Article 1 of this Agreement. This integrated text shall apply upon entry into force of this Agreement.

<u>Article 3</u>

In accordance with Article 16 of the U.S.-EU Extradition Agreement, this Agreement shall apply to offenses committed before as well as after it enters into force.

<u>Article 4</u>

This Agreement shall not apply to requests made prior to its entry into force.

<u>Article 5</u>

1.     This Agreement shall be subject to ratification and the instruments of ratification shall be exchanged as soon as possible. This Agreement shall enter into force on the date of entry into force of the U.S.-EU Extradition Agreement.

2.     In the event of termination of the U.S.-EU Extradition Agreement, this Agreement shall be terminated as of the date of termination of the U.S.-EU Extradition Agreement, and the U.S.-Poland Extradition Treaty shall be applied instead. The United States of America and the Republic of Poland nevertheless may agree to continue to apply some or all of the provisions of this Agreement.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

DONE at Warsaw, this 9th day of June , 2006, in duplicate, in the English and Polish languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:

FOR THE GOVERNMENT OF THE
REPUBLIC OF POLAND:

2

ANNEX

EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND
THE REPUBLIC OF POLAND

### Article 1
### Obligation to Extradite

The Contracting States agree to extradite to each other, pursuant to the provisions
of this Treaty, persons whom the authorities in the Requesting State seek for
prosecution or have found guilty of an extraditable offense.

### Article 2
### Extraditable Offenses

1. An offense shall be an extraditable offense if it is punishable under the laws in
both Contracting States by deprivation of liberty for a maximum period of more than
one year or by a more severe penalty.

2. An offense shall also be an extraditable offense if it consists of an attempt to
commit, or participation in the commission of, an offense described in paragraph 1 of
this Article. Any type of association to commit offenses described in paragraph 1 of this
Article, as provided by the laws of Poland, and conspiracy to commit an offense
described in paragraph 1 of this Article, as provided by the laws of the United States,
shall also be extraditable offenses.

3. For the purposes of this Article, an offense shall be an extraditable offense:

(a)   whether or not the laws in the Contracting States place the offense within the
      same category of offenses or describe the offense by the same terminology; or

(b)   whether or not the offense is one for which United States federal law requires
      the showing of such matters as interstate transportation, or use of the mails or
      of other facilities affecting interstate or foreign commerce, such matters being
      merely for the purpose of establishing jurisdiction in a United States federal
      court.

4. If the offense has been committed outside the territory of the Requesting State,
extradition shall be granted if the laws in the Requested State provide for the
punishment of an offense committed outside its territory in similar circumstances. If the
laws in the Requested State do not so provide, the executive authority of the Requested
State may, in its discretion, grant extradition.

5. If extradition has been granted for an extraditable offense, it shall also be granted
for any other offense specified in the request, even if the latter offense is punishable by

3

deprivation of liberty for one year or less, provided that all other requirements for extradition are met.

## Article 3
## Fiscal Offenses

An offense shall also be an extraditable offense if it consists of an offense in connection with taxes, duties, international transfers of funds, and importation, exportation, and transit of goods, even if the law of the Requested State does not require the same type of fee or tax or does not regulate fees, taxes, duties, transit of goods, and currency transactions in the same manner as the laws of the Requesting State.

## Article 4
## Nationality

1. Neither Contracting State shall be bound to extradite its own nationals, but the Executive Authority of the Requested State shall have the power to extradite such persons if, in its discretion, it be deemed proper and possible to do so.

2. If extradition is refused solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its competent authorities for a decision as to prosecution.

## Article 5
## Political and Military Offenses

1. Extradition shall not be granted if the offense for which extradition is requested is an offense of a political character.

2. For the purposes of this Treaty, the following offenses shall not be considered to be of a political character:

    (a) murder or any other offense against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

    (b) an offense for which both Contracting States have the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution; and

    (c) murder, manslaughter, malicious wounding, or inflicting grievous bodily harm or other grievous injury to health;

    (d) an offense involving kidnapping, abduction, or any form of unlawful detention, including the taking of a hostage;

4

(e) placing or using an explosive, incendiary or destructive device capable of endangering life, of causing substantial bodily harm, or of causing substantial property damage; and,

(f) an attempt to commit, or participation in the commission of, any of the foregoing offenses, as well as an association to commit these offenses as provided by the laws of Poland, or conspiracy to commit these offenses as provided by the laws of the United States.

3. Notwithstanding paragraph 2 of this Article, extradition shall not be granted if the executive authority of the Requested State determines that the request was politically motivated.

4. The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.


Article 6
Capital Punishment

Where the offense for which extradition is sought is punishable by death under the laws in the Requesting State and not punishable by death under the laws in the Requested State, the Requested State may grant extradition on the condition that the death penalty shall not be imposed on the person sought, or if for procedural reasons such condition cannot be complied with by the Requesting State, on condition that the death penalty if imposed shall not be carried out. If the Requesting State accepts extradition subject to conditions pursuant to this Article, it shall comply with the conditions. If the Requesting State does not accept the conditions, the request for extradition may be denied.


Article 7
Prior Prosecution

1. Extradition shall not be granted when the person sought has been convicted or acquitted with final and binding effect in the Requested State for the offense for which extradition is requested.

2. Extradition shall not be precluded by the fact that the competent authorities in the Requested State have decided either:

(a) not to prosecute the person sought for the acts for which extradition is requested; or

(b) to discontinue any criminal proceedings which have been instituted against the person sought for those acts.

5



Article 8
Lapse of Time

Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the law of the Requesting State.


Article 9
Extradition Procedures and Required Documents

1. Requests for extradition and supporting documents shall be transmitted through the diplomatic channel.

2. A request for extradition shall be supported by:

(a) documents, statements, or other types of information which describe the identity, nationality, and probable location of the person sought;

(b) information describing the facts of the offense and the procedural history of the case;

(c) the text of the law describing the essential elements of the offense for which extradition is requested;

(d) the text of the law prescribing the punishment for the offense;

(e) a statement of the provisions of law describing any time limit on the prosecution or enforcement of the penalty for the offense for which extradition has been sought; and

(f) the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable.

3. A request for extradition of a person who is sought for prosecution shall also be supported by:

(a) a copy of the warrant or order of arrest, if any, issued by a judge or other competent authority;

(b) a copy of the charging document, if any; and

(c) such information as would justify the committal for trial of the person if the offense had been committed in the Requested State.

6

4. A request for extradition relating to a person who has been found guilty of the offense for which extradition is sought shall also be supported by:

(a) a copy of the warrant or order of arrest, if any, issued by a judge or other competent authority;

(b) a copy of the judgment of conviction or, if such copy is not available, a statement by a judicial authority that the person has been found guilty;

(c) information establishing that the person sought is the person to whom the finding of guilt refers;

(d) a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; and

(e) in the case of a person who has been convicted in absentia, the documents required in paragraph 3.

Article 9 bis
Sensitive Information in a Request

Where the Requesting State contemplates the submission of particularly sensitive information in support of its request for extradition, it may consult the Requested State to determine the extent to which the information can be protected by the Requested State. If the Requested State cannot protect the information in the manner sought by the Requesting State, the Requesting State shall determine whether the information shall nonetheless be submitted.

Article 10
Admissibility of Documents

Documents that bear the certificate or seal of the Ministry or Department of Justice, or Ministry or Department responsible for foreign affairs, of the Requesting State shall be admissible in extradition proceedings in the Requested State without further certification, authentication, or other legalization.

Article 11
Translation

All documents submitted by the Requesting State shall be translated into the language of the Requested State.

7

Article 12
Provisional Arrest

1. In case of urgency, a Contracting State may apply for the provisional arrest of the person sought before the request for extradition is submitted. An application for provisional arrest may be transmitted through the diplomatic channel or directly between the United States Department of Justice and the Ministry of Justice of the Republic of Poland. The facilities of the International Criminal Police Organization (INTERPOL) may be used to transmit such a request.

2. The application for provisional arrest shall contain:

(a) a description of the person sought and information concerning the person's nationality;

(b) the location of the person sought, if known;

(c) a brief statement of the facts of the case, including, if possible, the time and location of the offense;

(d) a description of the laws violated;

(e) a statement of the existence of either:

(i) a warrant of arrest for a person sought for prosecution or already found guilty but not yet sentenced, or

(ii) a judgment of conviction against a person sought for the enforcement of a sentence; and

(f) a statement that a request for extradition for the person sought will follow.

3. The Requesting State shall be notified without delay of the disposition of its application and the reasons for any denial.

4. If the person whose extradition is sought is held under provisional arrest by the Requested State, the Requesting State may satisfy its obligation to transmit its request for extradition and supporting documents through the diplomatic channel pursuant to Article 9, by submitting the request and documents to the Embassy of the Requested State located in the Requesting State. In that case, the date of receipt by the Embassy shall be considered to be the date of receipt by the Requested State for purposes of applying the time limit that must be met under paragraph 5 of this Article in order to enable the person's continued detention.

8

5. A person who is provisionally arrested shall be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the supporting documents required in Article 9.

6. The fact that the person sought has been discharged from custody pursuant to paragraph (5) of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

Article 13
Additional Information

If the Requested State considers that the information furnished in support of a request for extradition is not sufficient to fulfill the requirements of this Treaty, that State may request that additional information be furnished within such a reasonable length of time as it specifies. Such additional information may be requested and furnished directly between the United States Department of Justice and the Ministry of Justice of Poland or through the diplomatic channel.

Article 14
Decision and Surrender

1. The Requested State shall promptly notify the Requesting State of its decision on the request for extradition.

2. If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial. The Requested State shall provide copies of pertinent judicial decisions upon request.

3. If the request for extradition is granted, the authorities of the Contracting States shall agree on the time and place for the surrender of the person sought.

4. Surrender of the person sought shall take place within such time as may be prescribed by the laws of the Requested State. If the law of the Requested State does not provide a specific time for surrender, it shall take place within thirty (30) days from the date on which the Requesting State is notified of the decision to extradite.

5. If the person sought is not removed from the territory of the Requested State within the time required under paragraph (4), he may be set at liberty. The Requested State may subsequently refuse to extradite the person sought for the same offense.

9



6. If circumstances beyond its control prevent a Contracting State from timely surrendering or taking delivery of the person to be extradited, it shall notify the other Contracting State before the expiration of the time limit. In such a case the competent authorities of the Contracting States may agree upon a new date for the surrender.

### Article 15
### Convictions in Absentia

If a Contracting State has applied to the other State for extradition of a person convicted in absentia, the executive authority of the Requested State may refuse to surrender the person if it deems that the proceedings in absentia did not ensure the minimum right to defense to which the person charged is entitled. Extradition may be effected, however, if the Requesting State guarantees, in a manner deemed adequate, that the case against the person whose extradition is requested will be reopened, with guaranteed right of defense.

### Article 16
### Temporary and Deferred Surrender

1. If the extradition request is granted in the case of a person who is being prosecuted for an offense other than that for which extradition is sought or is serving a sentence in the territory of the Requested State for an offense other than that for which extradition is sought, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution. The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by agreement of the Contracting States.

2. The Requested State may postpone the extradition proceedings against a person who is being prosecuted for the same offense for which that person is sought or any other offense, or who is serving a sentence in that State for an offense other than that for which extradition is sought. The postponement shall continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

### Article 17
### Requests for Extradition or Surrender Made by Several States

1. If the Requested State receives requests from the Requesting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall determine to which State, if any, it will surrender the person.

10



2.If the Republic of Poland receives an extradition request from the United States of America and a request for surrender pursuant to the European arrest warrant for the same person, either for the same offense or for different offenses, its executive authority shall determine to which State, if any, it will surrender the person.

3.In making its decision under paragraphs 1 and 2 of this Article, the Requested State shall consider all of the relevant factors, including, but not limited to, the following:

(a)        whether the requests were made pursuant to a treaty;
(b)        the places where each of the offenses was committed;
(c)        the respective interests of the requesting States;
(d)        the seriousness of the offenses;
(e)        the nationality of the victim;
(f)        the possibility of any subsequent extradition between the requesting States; and
(g)        the chronological order in which the requests were received from the requesting States.

Article 18
Seizure and Surrender of Property

1. To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all articles, documents, and evidence connected with the offense in respect of which extradition is granted. The items mentioned in this Article may be surrendered, to the extent permitted under the law of the Requested State, even when extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2.  The Requested State may condition the surrender of the property upon satisfactory assurances from the Requesting State that the property will be returned to the Requested State as soon as practicable. The Requested State may also defer the surrender of such property if it is needed as evidence in the Requested State.

3. The rights of third parties in such property shall be duly respected.

Article 19
Rule of Speciality

1. A person extradited under this Treaty may not be detained, prosecuted, sentenced, or punished in the Requesting State except for:

(a) an offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable or is a lesser form of such offense;

11



(b) an offense committed after the extradition of the person; or

(c) an offense for which the executive authority of the Requested State has consented to the person's detention, prosecution, sentencing, or punishment. For the purpose of this subparagraph:

   (i) the Requested State may require the submission of the documents specified in Article 9; and

   (ii) unless the Requested State objects in writing, the person extradited may be detained by the Requesting State for ninety (90) days, or for such longer period of time as the Requested State may authorize, while the request is being processed.

2.   A person extradited under this Treaty may not be extradited to a third State for an offense committed prior to the surrender unless the surrendering State consents.

3.   Paragraphs 1 and 2 of this Article shall not prevent the detention, prosecution, sentencing, or punishment of an extradited person, or the extradition of that person to a third State, if:

(a) that person leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

(b) that person does not leave the territory of the Requesting State within thirty (30) days of the day on which that person is free to leave.

## Article 20
### Simplified Extradition

If the extradition of a person sought to the Requesting State is not obviously precluded by the laws of the Requested State and provided the person sought irrevocably agrees in writing to his extradition after personally being advised by a judge or competent magistrate of his rights to formal extradition proceedings and the protection afforded by them that he would lose, the Requested State may surrender the person sought without a formal extradition proceeding having taken place. In this case Article 19 shall not be applicable.

## Article 21
### Transit

1. Either Contracting State may authorize transportation through its territory of a person surrendered to the other State by a third State. A request for transit shall be made through the diplomatic channel or directly between the United States Department of

12



Justice and the Ministry of Justice of the Republic of Poland. The facilities of the International Criminal Police Organization (INTERPOL) may be used to transmit such a request. It shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit may be detained in custody during the period of transit.

2. No authorization is required where air transportation is being used by one Contracting State and no landing is scheduled on the territory of the other Contracting State. If an unscheduled landing occurs on the territory of the other Contracting State, that Contracting State may require the request for transit as provided in paragraph 1. That Contracting State may detain the person to be transported until the request for transit is received and the transit is effected, so long as the request is received within ninety-six (96) hours of the unscheduled landing.

Article 22
Representation and Expenses

1. The Requested State shall assist, appear in court, and represent the interests of the Requesting State, in any proceeding arising out of a request for extradition.

2. The Requesting State shall bear the expenses related to the translation of documents and the transportation of the person surrendered. The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3. Neither State shall make any other pecuniary claim against the other State arising out of extradition procedures under this Treaty.

Article 23
Consultation

1. The United States Department of Justice and Ministry of Justice of the Republic of Poland may consult with each other directly or through the facilities of INTERPOL in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

2. The Requesting State shall, at the request of the Requested State, inform the Requested State of the status of criminal proceedings against persons who have been extradited, and provide a copy of the final and binding decision if one has been issued in the case in question.

13

Article 24
Executive Authorities


For the United States of America, the executive authority shall be the Secretary of State or a person designated by the Secretary of State. For Poland, the executive authority shall be the Minister of Justice-Attorney General or a person designated by the Minister of Justice-Attorney General.


Article 25
Termination

Either Contracting State may terminate this Treaty at any time by giving written notice to the other Contracting State, and the termination shall be effective six months after the date of the receipt of such notice.

14



RZECZPOSPOLITA POLSKA
MINISTER SPRAWIEDLIWOŚCI

DWM PC II 073 – 156 /12

Warszawa, dnia  05.10.  2012 roku

Pani
**Hillary Rodham Clinton**

**Sekretarz Stanu**
**Stanów Zjednoczonych Ameryki**

W oparciu o treść artykułu 1, artykułu 2 ustęp 1 i 2 oraz artykułu 12 Umowy między Rzecząpospolitą Polską a Stanami Zjednoczonymi Ameryki o ekstradycji z dnia 10 lipca 1996 roku a także w oparciu o treść artykułu 5 ustęp 2 Umowy między Stanami Zjednoczonymi Ameryki a Unią Europejską o ekstradycji z dnia 25 czerwca 2003 roku, w załączeniu uprzejmie przesyłam wniosek Prokuratora Okręgowego w Gdańsku z dnia 5 września 2012 roku, numer III Oz 480/08, o tymczasowe aresztowanie i ekstradycję obywatela polskiego Roberta Zendrana (Robert Zendran), podejrzanego o popełnienie przestępstwa z artykułu 280 paragraf 1 kodeksu karnego - wraz z wymaganymi dokumentami.

Podzielając stanowisko wyrażone we wniosku proszę o jego pozytywne rozpatrzenie.

Sprawa Roberta Zendrana zarejestrowana jest w prowadzącej postępowanie ekstradycyjne Prokuraturze Generalnej Rzeczypospolitej Polskiej pod sygnaturą PG V Oz 1990/10/E, proszę zatem władze Stanów Zjednoczonych Ameryki o kierowanie dalszej korespondencji dotyczącej niniejszego wniosku do tego organu.

z upoważnienia
MINISTRA SPRAWIEDLIWOŚCI

*Wojciech Węgrzyn*
PODSEKRETARZ STANU

PROKURATURA OKRĘGOWA
ul. Wały Jagiellońskie 36
Tel. cent. 58-32-12-000, fax 58-32-12-011

Gdańsk, dnia 5 września 2012 roku

III Oz 480 / 08

## WNIOSEK
### o tymczasowe aresztowanie i ekstradycję

Zwracam się z prośbą o tymczasowe aresztowanie i ekstradycję:

**Roberta Łukasza Zendran**
syna Jana i Stefanii z domu Cześnik
urodzonego 8 marca 1968 roku w Legnicy
obywatela Rzeczypospolitej Polskiej
ostatnio zamieszkałego w Kołobrzegu, ulica Koniecpolskiego 14B/10

Materiał dowodowy zebrany w sprawie o sygnaturze 3 Ds. 80/07 prowadzonej przez Prokuraturę Rejonową w Gdyni pozwolił na wydanie w dniu 07.05.2007 roku postanowienia o przedstawieniu zarzutów Robertowi Zendran o to, że:

I. w dniu 20.11.1998 roku w Gdyni, działając wspólnie i w porozumieniu z Andrzejem Synowiec i Piotrem Nagowskim i inną nieustaloną osobą, po uprzednim doprowadzeniu Dariusza Wolniaka do stanu bezbronności poprzez założenie na ręce kajdanek, a następnie przywiązanie taśmą parcianą do drzewa w lesie, dokonał kradzieży pieniędzy w łącznej kwocie 300.300 PLN na szkodę Dariusza Wolniak
   **to jest o przestępstwo z artykułu 280 paragraf 1 kodeksu karnego**

Stan faktyczny:

W dniu 20 listopada 1998 roku do kantoru wymiany walut „GB" w Gdyni, przy ulicy Abrahama 16, około godziny 11.00 weszło dwóch mężczyzn ubranych w mundury policyjne i powiedzieli, że są z Komendy Wojewódzkiej Policji w Gdańsku. Poinformowali jednego z właścicieli Dariusza Wolniak, że mają nakaz przeszukania z uwagi na podejrzenie wprowadzania do obiegu fałszywych banknotów polskich i obcych walut. Jeden z tych mężczyzn otworzył neseser, w którym były stare druki policyjne z napisami „Przesłuchanie" oraz druk z napisem „Nakaz". Podczas rozmowy z właścicielem kantoru polecili mu aby wziął pieniądze i udał się z nimi do Komendy Wojewódzkiej Policji w Gdańsku na ulicę Okopową, gdzie na miejscu czekają już eksperci z Narodowego Banku Polskiego aby stwierdzić autentyczność banknotów. Właściciel zapakował 217.000 PLN, 11.800 USD, 20.900 DEM, to jest łączną wartość 300.300 PLN i wyszedł z tymi mężczyznami, a następnie wsiadł z nimi do pojazdu marki VW Passat koloru srebrnego o numerze rejestracyjnym MOF 2387 (stary typ tablic służbowych) i odjechali. Mężczyźni ci nie wypełnili żadnych dokumentów procesowych. Wszystko miało być spisane po przyjeździe do Komendy. Dwaj mężczyźni, wraz z właścicielem kantoru wsiedli do samochodu, w którym czekał kierowca. Po przejechaniu obwodnicy Dariusz Wolniak zorientował się, że cała sytuacja jest mistyfikacją i mężczyźni nie są prawdziwymi policjantami. Jeden z nich założył mu na ręce kajdanki. Właściciel kantoru został wywieziony przez mężczyzn do lasu w okolicach Pustek Cisowskich. W lesie przy drodze obok ulicy Marszewskiej, zdjęto mu kajdanki, przywiązano go taśmą do drzewa i pozostawiono.

Dariusz Wolniak zdołał się oswobodzić i nawiązał kontakt ze swoim pracownikiem, który już wcześniej poinformował Policję. Samochód, którym poruszali się sprawcy został ujawniony na terenie Rumi, przy ulicy Kamiennej, w kompleksie leśnym. Ustalono, iż tablice rejestracyjne o wyznaczniku MOF 2387 zostały skradzione z samochodu policyjnego na terenie Jastrowia w dniu 10 listopada 1998 roku. Samochód, którym poruszali się sprawcy został skradziony w dniu 8 listopada 1998 roku na terenie Piły i pierwotnie posiadał numery tablic o wyznaczniku PAL 0220 i należał do Zbigniewa Ciszek.

W szczególności na sprawstwo podejrzanego w zakresie zarzucanego mu czynu wskazują następujące materiały:

**Numer 1** - protokół przesłuchania podejrzanego Piotra Nagowskiego z dnia 06.02.2007 roku. Z wyjaśnień podejrzanego wynika, między innymi, że pod koniec sierpnia lub na początku września 1998 lub w 1999 roku w Kołobrzegu, gdzieś na ulicy spotkał swojego znajomego o nazwisku Zendran Robert. W trakcie spotkania Zendran powiedział mu, że „jest robota i można dobrze zarobić". Konkretyzując wskazał mu, że chodzi o kantor i że ludzie z kantoru sami im dadzą pieniądze. Mówił mu, że ma już dwóch ludzi, którzy z nim „zrobią" ten kantor, lecz brakuje mu jeszcze kierowcy. Piotr Nagowski zgodził się na propozycję, w związku z powyższym Zendran przekazał mu, że skontaktuje się z nim jak wszystko dogra. Po upływie miesiąca lub dwóch Zendran zatelefonował do niego i poprosił o spotkanie. Po upływie tygodnia lub dwóch od tego kolejnego spotkania ponownie zadzwonił do P. Nagowskiego Robert Zendran, mówiąc, że wszystko jest już gotowe. Następnego dnia Zendran przyjechał po niego samochodem osobowym. W pojeździe siedział już Andrzej Synowiec i „Jasiu". Z Kołobrzegu pojechali trasą na Piłę. Zatrzymali się gdzieś pod Piłą, pod garażami. Pod garażem stał Volkswagen Passat koloru stalowego. Wszyscy wysiedli z pojazdu. W bagażniku tego pojazdu były mundury policyjne. Zendran nie przebierał się w te mundury. Wówczas Piotr Nagowski dowiedział się, że pojadą do jakiegoś kantoru w Trójmieście. Według planu do kantoru mieli wejść Andrzej Synowiec i „Jasiu". Po przebraniu się w mundury cała trójka wsiadła do VW Passata. Podejrzany wyjaśnił, iż Zendran pojechał za nimi swoim samochodem. Przyjechali do Gdyni pod jakiś kantor. Zendran odjechał swoim samochodem sprzed kantoru, a reszta wysiadła i weszła do kantoru, oprócz kierowcy. W czasie jazdy z właścicielem kantoru Robert Zendran nie telefonował do nich. Po porzuceniu pojazdu, podejrzany udał się autobusem do Wejherowa, gdzie z budki telefonicznej zadzwonił na telefon komórkowy Zendrana. Umówili się, że Zendran będzie na niego czekał przy trasie wylotowej z Wejherowa na Słupsk. Zendran przyjechał po niego sam, czekał na niego przy wyjeździe do Wejherowa. Następnie pojechali do Koszalina. Robert Zendran zabrał go do jakiegoś mieszkania w Koszalinie, gdzie byli już Synowiec i „Jasiu". Synowiec i „Jasiu" mówili mu, że ich również odebrał Zendran. W mieszkaniu podzielono pieniądze na cztery części. Każdy zabrał swoją część.

**Numer 2**- protokół przesłuchania podejrzanego Piotra Nagowskiego z dnia 07.02.2007 roku W trakcie przesłuchania okazano mu tablicę poglądową z wizerunkami czterech mężczyzn, wśród których rozpoznał mężczyznę Roberta Zendran. Potwierdził, iż Robert Zendran kierował rozbojem na kantor wymiany walut w Gdyni, w którym brał udział z innymi osobami.

**Numer 3** – protokół przesłuchania podejrzanego Piotra Nagowskiego z dnia 29.03.2007 roku, w którym podejrzany podtrzymał swoje wcześniejsze wyjaśnienia i nadmienił, że do tego przestępstwa namówił go Robert Zendran. Przed dokonaniem przestępstwa Zendran zapytał go czy nie będzie mu przeszkadzało, że może być z nimi

policjant. Przed całym zdarzeniem kontaktował się z nim tylko Zendran i on wszędzie go wprowadzał. Przed napadem Zendran przyjechał po niego, następnie pojechali po Synowca, z którym był już „Jasiu", a potem pojechali na miejsce gdzie czekał na nich samochód. Nadmienił, iż Robert Zendran po napadzie zabrał ich swoim samochodem marki Nissan.

**Numer 4** - protokół przesłuchania podejrzanego Andrzeja Synowiec z dnia 06.02.2007 roku. Z wyjaśnień podejrzanego wynika m.in., że po wydaleniu z Policji w lutym 1998 roku utrzymywał kontakty przy sprowadzaniu samochodów z Niemiec z Robertem Zendran, który wyjechał ok. 2002-2003 roku do USA. Robert Zendran miał swój warsztat i autohandel.

**Numer 5** - protokół przesłuchania podejrzanego Andrzeja Synowiec z dnia 22.05.2007 roku. Wymieniony wskazał, iż po zwolnieniu z Policji zamieszkał u Roberta Zendran, w wynajmowanym przez niego budynku. Z tego co się orientował to Zendran zajmował się również paserstwem kradzionych samochodów. W listopadzie 1998 roku Zendran przyjechał do niego z propozycją udziału w robocie na tzw. „policjanta". Zendran powrócił do niego z mężczyzną o imieniu „Jasiu". Podejrzany Synowiec w rozmowie z nimi dowiedział się, że celem będzie kantor w Gdyni. Z ich słów dowiedział się, że wykonali tam rozpoznanie i mogło się tam znajdować 150.000 – 200.000 PLN. Zendran miał ich odebrać po robocie i porzucenie samochodu. Od nich Andrzej Synowiec dowiedział się, że samochód na robotę już mają i był on przetestowany. Podejrzany nadmienił, iż pojazd marki VW Passat stał na parkingu w Kołobrzegu przed hotelem "Scanpol". Zendran tym pojazdem przyjechał rano do swojego warsztatu, tam wymienili w nim tablice rejestracyjne na policyjne. Zendran do Gdyni miał ich prowadzić swoim samochodem marki Nissan Primera, jednak się pogubili i jechali tam sami. Dopiero później zdzwonili się i potwierdzili, że Zendran odbierze ich po robocie w miejscu już wcześniej ustalonym. W warsztacie Zendrana ubrali się w mundury milicyjne. Sweter policyjny miał kupić Zendran od kogoś z Policji z Kołobrzegu. Podejrzany nadmienił, iż miał przy sobie czarną aktówkę, w której znajdowało się kilka druków procesowych, które załatwiał Zendran. W Wejherowie miał na nich czekać Zendran. Zendran podjechał po niego samochodem, podwiózł go kilka ulic, w tym czasie podejrzany przebrał się, wysiadł z samochodu i pociągiem z Wejherowa udał się do domu. Pieniądze zabrał Zendran. Wieczorem zadzwonił do niego Zendran i powiedział, że wszystko jest w porządku. Następnego dnia spotkał się z Zendranem, jego „dola" miała być wypłacona w ratach, z których od Zendrana otrzymał łącznie około 20.000 PLN. Zendran winien był mu jeszcze jakieś pieniądze, gdyż miało być około 50.000 PLN na głowę.

Zarzucone Robertowi Zendran przestępstwo zagrożone jest następującą karą:
—   czyn opisany w punkcie I karą pozbawienia wolności od lat 2 do 12,

Termin przedawnienia przestępstwa zarzucanego Robertowi Zendran przewidziany jest:
—   za czyn opisany w punkcie I postanowienia o przedstawieniu zarzutów na dzień 21.11.2023 roku,

Przedmiotowe śledztwo do tej pory nie zostało ukończone, albowiem nie wykonano wszystkich czynności procesowych z udziałem podejrzanego Roberta Zendran, który przed organami ścigania ukrywa się od 2007 roku.

Od 24 lipca 2007 roku Robert Zendran był poszukiwany listem gończym w powyższej sprawie. Czynności poszukiwawcze w tej sprawie nie przyniosły pozytywnych efektów. W toku czynności poszukiwawczych prowadzonych za Robertem Zendran ustalono, iż podejrzany nie przebywa w miejscu swego stałego zamieszkania, jak również nie ujawniono innego jego miejsca pobytu w kraju. Biorąc pod uwagę ustalenia o przekroczeniu przez podejrzanego granicy Rzeczypospolitej Polskiej w dniu 20.07.2000 roku i długotrwałość nieskutecznych poszukiwań na terenie kraju, bezsporne jest to, że ukrywa się on poza granicami kraju.

W oparciu o dokonane w przedmiotowej sprawie ustalenia, na wniosek Prokuratury Rejonowej w Gdyni, Sąd Rejonowy w Gdyni, postanowienie z dnia 12.07.2007 roku, sygnatura akt IX Kp 258/07 zastosował wobec Roberta Zendran środek zapobiegawczy w postaci tymczasowego aresztowania. Następnie za wyżej wymienionym rozesłano list gończy oraz wdrożono jego międzynarodowe poszukiwania.

Tymczasowe aresztowanie podejrzanego i poszukiwanie go listem gończym zgodnie z treścią artykułów 258 i 279 kodeksu postępowania karnego może nastąpić między innymi jeżeli ukrywa się on lub nie ma stałego miejsca pobytu w Polsce.

Obie te okoliczności zaistniały w przypadku podejrzanego Robera Zendran.

Dotychczas prowadzone poszukiwania Roberta Zendran zarówno krajowe jak i międzynarodowe były nieskuteczne. Z informacji udzielonej przez Komendę Powiatową Policji w Kołobrzegu wynika, iż prawdopodobne miejsce pobytu Roberta Zendran jest w Stanach Zjednoczonych Ameryki.

Jednocześnie nadmieniam, że Robert Zendran nie był dotychczas daktyloskopowany na terytorium Rzeczypospolitej Polskiej.

W związku z przedstawionymi powyżej okolicznościami wnoszę o tymczasowe aresztowanie i ekstradycję podejrzanego.

Jednocześnie oświadczam, że treść niniejszego wniosku jest zgodna ze zgromadzonym w sprawie materiałem dowodowym.

Ponadto zapewniam, że Robert Zendran nie zostanie pociągnięty bez zgody odnośnych władz Stanów Zjednoczonych Ameryki do odpowiedzialności karnej za przestępstwa nie objęte niniejszym wnioskiem, jak również nie zostanie wydany władzom innego państwa.

ZASTĘPCA
PROKURATORA OKRĘGOWEGO

dr Ruszard Pasektewicz

Do wniosku załączam następujące dokumenty:
- odpis postanowienia Sądu Rejonowego w Gdyni z dnia 12.07.2007 roku , sygnatura akt IX Kp 258/07 o tymczasowym aresztowaniu,
- odpis postanowienia z dnia 24 lipca 2007 roku Prokuratury Rejonowej w Gdyni o poszukiwaniu podejrzanego listem gończym oraz listu gończego,
- fotografia Roberta Zendran,
- wyciąg z przepisów kodeksu karnego.

Pl. Konstytucji 5
81-969 Gdynia 2
Sygnatura akt IX Kp 258/07
3 Ds. 80/07

Gdynia 2007-07-12

POSTANOWIENIE

o tymczasowym aresztowaniu w postępowaniu przygotowawczym

**Sąd Rejonowy w Gdyni IX Wydział Karny**
na posiedzeniu w składzie

Przewodniczący: **Sędzia Sądu Rejonowego Aneta Szteler - Olszewska**

po rozpoznaniu
wniosku Prokuratora Prokuratury Rejonowej w Gdyni z dnia 09.07.2007 roku
w przedmiocie zastosowania tymczasowego aresztowania w stosunku do **Roberta Zendrana**
podejrzanego o to, że:

I.  w dniu 20.11.1998 roku w Gdyni, działając wspólnie i porozumieniu z Andrzejem Synowiec i Piotrem Nagowskim i inną nieustaloną osobą, po uprzednim doprowadzeniu Dariusza Wolniaka do stanu bezbronności poprzez założenie na ręce kajdanek, a następnie przywiązanie taśmą parcianą do drzewa w lesie dokonał kradzieży pieniędzy w łącznej kwocie 300.300 złotych na szkodę Dariusza Wolnika,
    to jest o przestępstwo z artykułu 280 paragraf I kodeksu karnego,
II. W okresie od 08.11.1998 roku do 20.11.1998 roku, w nieustalonym miejscu działając wspólnie i w porozumieniu z Andrzejem Synowiec i Piotrem Nagowskim i inną nieustaloną osobą, nabył samochód marki VW Passat nr rejestracyjny PAL 0220 wartości 25.000 złotych podczas gdy na podstawie towarzyszących okoliczność powinien był przypuszczać, że pojazd ten został uzyskany w wyniku kradzieży z włamaniem, działając tym na szkodę Zbigniewa Ciszek,
    to jest o przestępstwo z artykułu 292 paragraf I kodeksu karnego,

na podstawie artykułów 30 paragraf 1, 93 paragraf 1, 249 paragraf 1, 251 paragraf 1 i 2, 258 paragraf 1 punkt 1 kodeksu postępowania karnego

**postanawia**

zastosować wobec Roberta Zendran, syna Jana, urodzonego 08.03.1968 roku w Legnicy środek zapobiegawczy w postaci tymczasowego aresztowania na okres 14 (czternastu) dni od daty zatrzymania

UZASADNIENIE

Jak wynika z informacji Policji i Biura Ewidencji Ludności w Kołobrzegu podejrzany nie przebywa w miejscu dotychczasowego zamieszkania, w którym był zameldowany do 10.05.2004 roku, a miejsce jego aktualnego pobytu, czy zameldowania nie jest znane. Również według informacji Centralnego Zarządu Służby Więziennictwa podejrzany nie przebywa w Zakładzie Karnym lub areszcie na terenie kraju. Ustalono również na podstawie informacji z Morskiego Oddziału Straży Granicznej w Gdańsku, iż podejrzany przekroczył granicę Rzeczpospolitej dnia 20.07.2000 roku.

Zebrany dotychczas materiał dowodowy w postaci zeznań świadków i zgromadzonej w sprawie dokumentacji, w tym protokołów przeszukania, okazania, oględzin, opinii kryminalistycznych, dokumentacji fotograficznej dostatecznie uprawdopodabnia popełnienie przez niego zarzucanych mu czynów.

W tej sytuacji, z uwagi na uzasadnione podejrzenie ukrywania się podejrzanego przed organami ścigania, tymczasowe aresztowanie jest niezbędne dla zabezpieczenia prawidłowego toku postępowania i przeprowadzenia czynności procesowych i faktycznych z udziałem podejrzanego.

Dlatego też Sąd orzekł, jak na wstępie.

Postanowienie jest wykonalne
Gdynia, dnia .12..01.200.2.r.
Sekretarz
*[podpis]*

Za zgodność:
Gdynia, dnia 25. 06. 2012r.
Sekretarz
*[podpis]*

Prokuratura Rejonowa
w Gdyni
sygnatura akt 3 Ds 80/07

Gdynia, dnia 24 lipca 2007 roku

### Komenda Miejska Policji
### w Kołobrzegu

## L I S T   G O Ń C Z Y

Beata Gurska – prokurator Prokuratury Rejonowej w Gdyni
stosownie do swojego postanowienia z dnia 24 lipca 2007 roku
wydanego na podstawie artykułu 279 paragraf 1 kodeksu postępowania karnego
w sprawie 3 Ds 90/07

I.   Zarządza poszukiwanie listem gończym niżej wymienionego
podejrzanego:

1. Nazwisko i imiona:              ZENDRAN ROBERT
2. Pseudonim:                      -
3. Imię ojca:                      Jan
4. Imię i nazwisko panieńskie matki:   Stefania z domu Cześnik
5. Data i miejsce urodzenia:       08 marca 1968 roku  Legnica
6. Ostatnie miejsce zamieszkania:  Kołobrzeg ulica Unii Lubelskiej
                                   63/6
7. Ostatnie miejsce pracy:         -
8. Adres rodziców lub rodziny:     Kołobrzeg ulica Dubois 16 C/5
9. Zawód:                          brak danych
10. Rysopis:
wzrost:                 brak danych
włosy:                  brak danych
czoło:                  brak danych
czoło:                  brak danych
twarz:                  brak danych
kolor oczu:             brak danych
uszy:                   brak danych
nos:                    brak danych
usta:                   brak danych
zarost:                 brak danych
znaki szczególne:       brak danych
inne cechy rysopisowe:  brak danych

S T A Ż Y S T A

Zgodność odpisu stwierdzam

**Robert Zendran podejrzany jest o to, że:**

I.     w dniu 20 listopada 1998 roku w Gdyni, działając wspólnie i w porozumieniu z Andrzejem Synowiec i Piotrem Nagowskim i inną nieustaloną osobą, po uprzednim doprowadzeniu Dariusza Wolnika do stanu bezbronności poprzez założenie na ręce kajdanek, a następnie przywiązanie taśmą parcianą do drzewa w lesie dokonał kradzieży pieniędzy w łącznej kwocie 300.300 złotych na szkodę Dariusza Wolnika,

       to jest o przestępstwo z artykułu 280 paragraf 1 kodeksu karnego

II.     w okresie od 08 listopada 1998 roku do 20 listopada 1998 roku, w nieustalonym miejscu działając wspólnie i w porozumieniu z Andrzejem Synowiec i Piotrem Nagowskim i inną nieustaloną osobą, nabył samochód marki Volkswagen Passat numer rejestracyjny PAL 0220 wartości 25.000 złotych, podczas gdy na podstawie towarzyszących okoliczności powinien przypuszczać, że pojazd ten został uzyskany w wyniku kradzieży z włamaniem, działając tym na szkodę Zbigniewa Ciszek,

       to jest o przestępstwo z artykułu 292 paragraf 1 kodeksu karnego

Data i sygnatura postanowienia o tymczasowym aresztowaniu:
12 lipca 2007 roku sygnatura IX Kp 258/07

       Wzywa się każdego, kto zna miejsce pobytu poszukiwanego, do zawiadomienia o tym najbliższej jednostki Policji lub prokuratora /artykuł 280 paragraf 1 punkt 4 kodeksu postępowania karnego/.

       Ostrzega się, że za ukrywanie poszukiwanego lub dopomaganie mu w ucieczce grozi kara pozbawienia wolności do lat 5 /artykuł 239 paragraf 1 kodeksu karnego/.

Udziela się zapewnienia o utrzymaniu tajemnicy co do osoby informującej /artykuł 280 paragraf 2 kodeksu postępowania karnego/.

Załączniki:
1. Odpis postanowienia o tymczasowym aresztowaniu
2. Nakaz przyjęcia do najbliższego aresztu śledczego

                     PROKURATOR
                     Prokuratury Rejonowej
                     magister Beata Gurska
                     /-/ podpis nieczytelny

Zgodność odpisu stwierdzam

STAŻYSTA

Paweł Bugajski

PROKURATURA REJONOWA
ulica 10 Lutego 39
81-364 GDYNIA

Sygnatura akt 3 Ds. 80/07

# POSTANOWIENIE
## o poszukiwaniu podejrzanego listem gończym

Dnia 24 lipca 2007 roku

Beata Gurska – prokurator Prokuratury Rejonowej w Gdyni
w sprawie przeciwko Robertowi Zendran
podejrzanemu o przestępstwo z artykułu 280 paragraf 1 kodeksu karnego i inne
- na podstawie artykułu 279 paragraf 1 kodeksu postępowania karnego

**postanowił :**

zarządzić poszukiwanie listem gończym ukrywającego się podejrzanego Roberta Zendran co

do którego wydano w dniu 12 lipca 2007 roku, postanowienie o tymczasowym aresztowaniu.

### UZASADNIENIE

Prokuratura Rejonowa w Gdyni nadzoruje śledztwo przeciwko Robertowi Zendran, podejrzanemu o dokonanie rozboju na osobie Dariusza Wolnika w dniu 20 listopada 1998 roku w Gdyni i kradzieży pieniędzy w łącznej kwocie 300.300,00 złotych polskich na jego szkodę, to jest o przestępstwo z artykułu 280 paragraf 1 kodeksu karnego .

Z uwagi na fakt, iż podejrzany Robert Zendran ukrywa się przed wymiarem sprawiedliwości konieczne stało się zawieszenie postępowania i poszukiwanie wymienionego listem gończym.

Z uwagi na powyższe należało postanowić jak wyżej.

PROKURATOR
Prokuratury Rejonowej
magister Beata Gurska
/-/ podpis nieczytelny

**Zarządzenie:**
Sporządzić list gończy i przesłać go do Komendy Policji w Kołobrzegu
w celu rozpowszechnienia poprzez.............................................

PROKURATOR
Prokuratury Rejonowej
magister Beata Gurska
/-/ podpis nieczytelny



zgodność odpisu stwierdzam
MŁODSZY REFERENT
2 6 07 2012
Gdynia, dnia

Paweł Bugajski



ROBERT ZENDRAN 08.03.1968r



Zgodność kserokopii stwierdzam

STAŻYSTA

30. 11. 2011
Gdynia, dnia

Prokuraturę

Wyciąg z przepisów kodeksu karnego -- Ustawa z dnia 6 czerwca 1997 roku (Dziennik Ustaw numer 88, pozycja 553)

**Artykuł 101**

**Paragraf 1**
Karalność przestępstwa ustaje, jeżeli od czasu jego popełnienia upłynęło lat:
    1)    30 - gdy czyn stanowi zbrodnię zabójstwa,
    2)    20 - gdy czyn stanowi inną zbrodnię,
    2a)   15 - gdy czyn stanowi występek zagrożony karą pozbawienia wolności przekraczającą 5 lat,
    3)    10 - gdy czyn stanowi występek zagrożony karą pozbawienia wolności przekraczającą 3 lata,
    4)    5 - gdy chodzi o pozostałe występki.

**Artykuł 102**

Jeżeli w okresie przewidzianym w artykule 101 wszczęto postępowanie przeciwko osobie, karalność popełnionego przez nią przestępstwa określonego w paragrafie 1 punkt 1-3 ustaje z upływem 10 lat, a w pozostałych wypadkach - z upływem 5 lat od zakończenia tego okresu.

**Artykuł 280**

**Paragraf 1**
Kto kradnie, używając przemocy wobec osoby lub grożąc natychmiastowym jej użyciem albo doprowadzając człowieka do stanu nieprzytomności lub bezbronności,
podlega karze pozbawienia wolności od lat 2 do 12.

**Artykuł 292**

**Paragraf 1**
Kto rzecz, o której na podstawie towarzyszących okoliczności powinien i może przypuszczać, że została uzyskana za pomocą czynu zabronionego, nabywa lub pomaga do jej zbycia albo tę rzecz przyjmuje lub pomaga do jej ukrycia,

Zgodność kserokopii z oryginałem
poświadczam
STARSZY REFERENT
1 1 STY. 2012
Gdańsk, dnia ............ 201
mgr Edyta Bluma

1

Certified translation from the Polish language



**REPUBLIC OF POLAND**
**MINISTER OF JUSTICE**

Warsaw, 05.10.2012

DWMPC II 073 - 156/12

> **Ms. Hillary Rodham Clinton**
>
> **Secretary of State**
> **United States of America**

By virtue of article 1, article 2 section 1 and 2 and article 12 of the Treaty between the Republic of Poland and the United States of America on extradition of July 10, 1996, in connection with article 5 section 2 of the Treaty between the United States of America and the European Union on extradition of June 25, 2003, enclosed please kindly find a request of the District Prosecutor in Gdańsk of September 5, 2012, reference number I Oz 480/08, for provisional arrest and extradition of Polish citizen Robert Zendran, suspected of perpetration of an offense under article 280 paragraph 1 of the Criminal Code - along with the required documents.

Sharing the position expressed in the request, I kindly request its positive consideration.

The case of Robert Zendran is registered at the Prosecutor General's Office of the Republic of Poland conducting extradition proceedings under file reference number PG V Oz 1990/10/E; I therefore request the authorities of the United States of America to address further correspondence concerning the present request directly to this body.

*Oblong stamp:*
by authorization of the
MINISTER OF JUSTICE
*/-/ illegible signature*
Wojciech Węgrzyn
UNDERSECRETARY OF STATE

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim:* "MINISTER OF JUSTICE *8*".



*Oblong stamp:*
DISTRICT PROSECUTOR'S OFFICE
Wały Jagiellońskie 36
80-853 GDAŃSK,
Switchboard 58-32-72-000, Fax 58-32-12-011                    Gdańsk, September 5, 2012

III Oz 480 / 08

## REQUEST
### for provisional arrest and extradition

I kindly request provisional arrest and extradition of:

**Robert Łukasz Zendran**
son of Jan and Stefania nee Cześnik
born on March 08, 1968 in Legnica
citizen of the Republic of Poland
lastly domiciled in Kołobrzeg, Koniecpolskiego 14B/10

The evidence collected in the case of file reference number 3 Ds. 80/07 conducted by the Regional Prosecutor's Office in Gdynia allowed for issue on 2007-05-07 of a decision on charging Robert Zendran with the following:

I.    on 20.11.1998 in Gdynia, acting jointly and in agreement with Andrzej Synowiec and Piotr Nagowski and another undetermined individual, having brought Dariusz Wolniak to a state of defenselessness by placing handcuffs on his wrists, and subsequently tying him to a tree in a forest with sackcloth band, he perpetrated theft of cash in total amount of PLN 300,300 to the detriment of Dariusz Wolniak

**that is an offense under article 280 paragraph 1 of he Criminal Code**

State of Facts:

On November 20, 1998 to men dressed in police uniforms entered the currency exchange outlet „GB" in Gdynia at Abrahama 16 at about 11.00 hours and stated that they were from the Provincial Police Headquarters (KWP) in Gdańsk. They advised one of the owners, Dariusz Wolniak, that they were in possession of a search warrant in connection with suspicion of placing in circulation of false Polish and foreign banknotes. One of the men opened a briefcase containing old police forms with the inscriptions „Interview" and print with the inscription „Warrant". During conversation with owner of the exchange outlet they instructed him to take cash and accompany them to the Provincial Police Headquarters in Gdańsk on Okopowa street, where experts from the National Bank of Poland were supposed to be waiting to verify authenticity of the banknotes. The owner packed PLN 217,000, USD 11,800, DEM 20,900, that is total value of PLN 300,300 and left with the men, subsequently got into a VW Passat vehicle of silver color, with registration number MOF 2387 (old type of police license plates) and they drove off. The men did not fill out any procedural documents. Everything was to be written down after they arrived at the Police Headquarters. The two men and the exchange outlet owner got into the car, where the driver was waiting. After they passed the bypass Dariusz Wolniak realized that the whole situation was a setup and the men were not real police officers. One of them placed handcuffs on his wrists. The owner of the

exchange outlet was driven by the men to a forest in the are of Pustki Cisowskie. In the forest by the road next to Marszewska street his handcuffs were removed, he was tied to a tree with a band and left there.

Dariusz Wolniak managed to free himself and contacted his employee, who had already notified the Police. The vehicle used by the perpetrators was found on Kamienna street in Rumia, in a forest complex. It was established that the license plates with the number MOF 2387 had been stolen from a police car in Jastrowie on November 10, 1998. The car used by the perpetrators was stolen on November 8, 1998 in Piła and originally had the registration number PAL 0220 and belonged to Zbigniew Ciszek.

In particular, the following materials indicate perpetration of the alleged act by the suspect:

**Number 1** - record of interview of suspect Piotr Nagowski of 2007-02-06. From the explanations of the suspect it follows among other things that in late August or early September of 1998 or in 1999 in Kołobrzeg, somewhere on the street he met an acquaintance of his named Zendran Robert. During the meeting Zendran told him that „there was a job and a good deal of money could be made". Specifically, he indicated that a currency exchange outlet was to be targeted and that the people from the exchange booth would themselves give them the money. He told him he already had two men who would „do" the exchange outlet with him, but he still needed a driver. Piotr Nagowski accepted the proposal, in which connection Zendran told him he would contact him when he had everything set and ready to go. After a month or two Zendran called him and requested a meeting. A week or two from this subsequent meeting P. Nagowski received another call from Robert Zendran, who told him everything was ready. On the following day Zendran came by to pick him up in a passenger car. In the car there were already sitting Andrzej Synowiec and „Jasiu". They took the route from Kołobrzeg towards Piła. They stopped somewhere outside Piła, next to some garages. Outside a garage there was parked a silver color Volkswagen Passat. Everyone got out of the car. There were some police uniforms in the trunk of that vehicle. Zendran did not change into one of these uniforms. Then Piotr Nagowski learned that they would go to an exchange outlet in Tricity. According to the plan, Andrzej Synowiec and „Jasiu" were to enter the exchange outlet. After changing into the uniforms, the trio got into the VW Passat. The suspect explained that Zendran followed them in his car. They arrived in Gdynia outside some exchange outlet. Zendran drove his car away from the exchange outlet, and the rest got out and entered the facility, except for the driver. While they were riding with the owner of the exchange outlet, Robert Zendran did not call them. After he ditched the vehicle, the suspect took a bus to Wejherowo, where he called Zendran's cell phone from a public phone booth. They arranged that Zendran would be waiting for him by the road leading from Wejherowo to Słupsk. Zendran came alone and waited for him by the entrance to Wejherowo. Then they drove to Koszalin. Robert Zendran took him to an apartment in Koszalin, where Synowiec and „Jasiu" were already waiting. Synowiec and „Jasiu" told him that they too had been picked up by Zendran. In the apartment the cash was split four ways. Each of them took his share.

**Number 2** - record of interview of suspect Piotr Nagowski of 2007-02-07. During the interview he was shown a pictorial board with images of four males, among which he recognized Robert Zendran. He confirmed that Robert Zendran directed the robbery of a currency exchange outlet in Gdynia, in which he took part with other individuals.

**Number 3** - record of interview of suspect Piotr Nagowski of 29.03.2007, in which the suspect upheld his prior explanations and mentioned that Robert Zendran had induced him to perpetrate this crime. Prior to perpetration of the offense Zendran asked him if he would mind

that a policeman may accompany them. Before the whole event, only Zendran contacted him and introduced him to everyone. Before the robbery, Zendran came to pick him up, then they went to pick up Synowiec, who was already accompanied by „Jasiu", and then they went to the place where the car was waiting for them. He mentioned that after the robbery Robert Zendran picked them up in his Nissan car.

**Number 4** - record of interview of suspect Andrzej Synowiec of 2007-02-06. From the explanations of the suspect it follows among other things that having been expelled from the Police in February 1998 he maintained contacts in relation to importing cars from Germany with Robert Zendran, who moved to the USA around 2002-2003. Robert Zendran had his own workshop and car trading business.

**Number 5** - record of interview of suspect Andrzej Synowiec of 2007-05-22. The mentioned indicated that following his discharge from the Police he took up residence at Robert Zendran's, in a building rented by the latter. From what he knew, Zendran was also involved in trafficking in stolen cars. In November 1998 Zendran came to him with a proposition of participation in a so-called „policeman job". Zendran returned to him a man named „Jasiu". The suspect Synowiec learned from conversation with them that the target was to be an exchange outlet in Gdynia. From their words he learned that they had explored the matter and that the place could be holding PLN 150,000 - 200,000. Zendran was to pick them up after the job and ditching of the car. Andrzej Synowiec learned form them that they already had a car for the job and that it had been tested. The suspect mentioned that the VW Passat vehicle was parked in Kołobrzeg outside the "Scanpol" hotel. Zendran brought the car in the morning to his workshop, where they replaced the license plates with police ones. Zendran was to lead them to Gdynia in his Nissan Primera, but they lost each other from sight and they drove there alone. Later they made contact by telephone and confirmed that Zendran would pick them up after the job at a previously established location. At Zendran's workshop they changed into police uniforms. Zendran supposedly bought a police sweater from someone of the Kołobrzeg Police. The suspect mentioned that he was carrying a black briefcase containing several procedural forms arranged by Zendran. Zendran was supposed to wait for them in Wejherowo. Zendran came to pick him up in his car, drove him for several blocks, during which time the suspect changed his clothes, then he goto out and took a train home from Wejherowo. The cash was taken by Zendran. In the evening Zendran called him and said everything was in order. On the following day he met with Zendran, his share was to be paid in installments, of which he received from Zendran a total of about PLN 20,000. Zendran still owed him some money, for it was supposed to be some PLN 50,000 each.

The offense alleged to Robert Zendran carries the following penalty:

- the act described in count I - penalty of imprisonment from 2 years up to 12 years,

The offense alleged to Robert Zendran will become statute barred:

- regarding the act described in count I of the decision on presentation of charges on 2023-11-21.

The investigation in question has not been concluded to date, because all procedural actions with participation of the suspect Robert Zendran have not been performed, as he has been absconding from law enforcement authorities since the year 2007.

Since July 24, 2007 Roman Zendran has been sought under an all-points bulletin in the above matter. The search activities in the case have not yielded positive results. In the course of the search activities conducted for Robert Zendran it was determined that the suspect was not staying at his place of domicile, and no other location of his stay in Poland has been revealed. Considering establishment that the suspect crossed the border of the Republic of

Poland on 2000-07-20 and the length of ineffective search in Poland, it is indisputable that he is absconding abroad.

Based on the determinations made in the case, on request of the Regional Prosecutor's Office in Gdynia, the Regional Court in Gdynia by decision of 2007-07-12 of file reference number IX Kp 258/07 applied with respect to Robert Zendran a preventive measure in the form of provisional arrest. Subsequently, an all-points bulletin was put out on the mentioned and an international search for him was instituted.

Provisional arrest of the suspect and a search for him under an all-points bulletin may take place under article 258 and 279 of the Code of Criminal Procedure inter alia if he is absconding or has no permanent domicile in Poland.

Both these circumstances occurred in the case of suspect Robert Zendran.

The hitherto search efforts to locate Robert Zendran, both domestic and international, have been ineffective. From information provided by the Poviat Police Headquarters in Kołobrzeg it follows that Robert Zendran is likely staying in the United States of America.

At the same time I mention that Robert Zendran has not been fingerprinted in the territory of the Republic of Poland.

In connection with the circumstances presented above, I request provisional arrest and extradition of the suspect.

At the same time I declare that the content of the present request is compliant with the evidence gathered in the case.

I further assure that Robert Zendran shall not, without consent of relevant authorities of the United States of America, be prosecuted for offenses not covered by the present request, and shall not be surrendered to authorities of any other state.

*Oblong stamp:*
DEPUTY
DISTRICT PROSECUTOR
*/-/ illegible signature*
Dr Ryszard Paszkiewicz

*Official round seal with the state emblem of the Republic of Poland in the center and the following inscription on the rim:* "DISTRICT PROSECUTOR'S OFFICE IN GDAŃSK *2*".

Enclosed herewith please find the following documents:
- extract of decision of the Regional Court in Gdynia of 2007-07-12, file reference number IX Kp 258/07 on provisional arrest,
- extract of decision of July 24, 2007 of the Regional Prosecutor's Office in Gdynia on searching for the suspect under an all-points bulletin and of the all-points bulletin,
- photograph of Robert Zendran,
- excerpt from regulations of the Criminal Code.



*Oblong stamp:*
No. *handwritten:* 6703/12
The Ministry of Foreign Affairs
herewith proves that this document
complies with the laws applicable in Poland
Stamp duty collected
Warsaw

*Date stamp: 26*th *September 2012*

*(-) illegible signature*
*Oblong stamp:*
Monika Grabek
Counsel

*Round, official stamp with the national emblem of the Republic of Poland in the centre and the following inscription on the rim:* "Ministry of Foreign Affairs  * 6 *"

*Oblong stamp:*
Stamp duty free
(Stamp Duty Act as of 16th November 2006
Journal of Laws No. 225, item 1635, article 2, clause 1, point 1).



*Oblong stamp:*
REGIONAL COURT
IX Criminal Department
Pl. Konstytucji 5
81-969 Gdynia 2

File reference number       **IX Kp 258/07**
                            **3 Ds. 80/07**

Gdynia 2007-07-12

## DECISION
### on provisional arrest in preliminary proceedings

**The Regional Court in Gdynia IX Criminal Department**
sitting in the following constitution

Presiding Judge - **Judge of the Regional Court Aneta Szteler - Olszewska**

having considered

a request of Prosecutor of the Regional Prosecutor's Office in Gdynia of 09.07.2007 in the matter of application of provisional arrest with respect to **Robert Zendran** suspected of the following:

I.   on 20.11.1998 in Gdynia, acting jointly and in agreement with Andrzej Synowiec and Piotr Nagowski and another undetermined individual, having brought Dariusz Wolniak to a state of defenselessness by placing handcuffs on his wrists, and subsequently tying him to a tree in a forest with sackcloth band, he perpetrated theft of cash in total amount of PLN 300,300 to the detriment of Dariusz Wolniak, that is an offense under article 280 paragraph 1 of the Criminal Code,

II.  In the period from 08.11.1998 through 20.11.1998, at an undisclosed location, acting jointly and in agreement with Andrzej Synowiec and Piotr Nagowski and another undetermined individual he acquired a VW Passat of registration number PAL 0220 worth PLN 25,000 while based on accompanying circumstances he should have supposed that the vehicle was obtained as a result of burglary, thereby acting to the detriment of Zbigniew Ciszek, that is an offense under article 292 paragraph 1 of the Criminal Code,

by virtue of article 30 paragraph 1, 93 paragraph 1, 249 paragraph 1, 251 paragraph 1 and 2, 258 paragraph 1 item 1 of the Code of Criminal Procedure

### decides

to apply with respect to Robert Zendran, son of Jan, born on 1968-03-08 in Legnica, a preventive measure in the form of provisional arrest for a period of 14 (fourteen) days from the date of apprehension

### STATEMENT OF REASONS

As follows from information provided by the Police and Population Registry Office in Kołobrzeg, the suspect is not staying at his place of hitherto domicile, where he was registered until 10.05.2004, and his current whereabouts or place of registration are unknown. Also, according to information of the Central Prison Service Board the suspect is not committed to a Penitentiary or a detention facility in Poland. It has also been established based on

information from the Sea Division of the Border Guard in Gdańsk that the suspect crossed the border of the Republic of Poland on 20.07.2000.

The evidence hitherto collected in the form of testimonies of witnesses and documentation gathered in the case, including records of search, presentation, inspection, forensic opinions, photographic documentation, sufficiently support the likelihood of perpetration by him of the alleged acts.

In this situation, in view of justified suspicion of the suspect's absconding from law enforcement authorities, provisional arrest ins necessary for securing of proper course of proceedings and conduct of procedural and factual actions with participation of the suspect.

Therefore the Court decided as in the opening paragraphs.

*Oblong stamp:*
The decision is enforceable
Gdynia, 12.07.2007.
*Secretary*
*/-/ illegible signature*

      *Round seal with the state emblem in the center and the inscription on the rim:*
        „REGIONAL COURT IN GDYNIA *11*"

                                      *Oblong stamp:*
                                        For conformity
                                        Gdynia, 25.06.2012
                                        Secretary
                                        */-/ illegible signature*



Regional Prosecutor's Office
in Gdynia
File reference number 3 Ds. 80/07

Gdynia, July 24, 2007

## CITY POLICE HEADQUARTERS
### in Kołobrzeg

### ALL-POINTS BULLETIN

Beata Gurska - prosecutor of the Regional Prosecutor's Office in Gdynia
pursuant to his decision of July 24, 2007
issued by virtue of article 279 paragraph 1 of the Code of Criminal Procedure in the case 3
Ds. 90/07

I.    Orders a search under an all-points bulletin for the following suspect:

| | | |
|---|---|---|
| 1. | Surname and given names: | ZENDRAN ROBERT |
| 2. | Alias | - |
| 3. | Father's name: | Jan |
| 4. | Name and maiden surname of mother: | Stefania nee Cześnik |
| 5. | Date and place of birth: | March 08, 1968 Legnica |
| 6. | Last place of residence: | Kołobrzeg, Unii Lubelskiej 63/6 |
| 7. | Last place of work: | - |
| 8. | Address of parents or family: | Kołobrzeg, Dubois 16 C/5 |
| 9. | Occupation: | no data |
| 10. | Description: | |

| | |
|---|---|
| height: | no data |
| hair: | no data |
| forehead: | no data |
| forehead: | no data |
| face: | no data |
| color of eyes: | no data |
| ears: | no data |
| nose: | no data |
| lips: | no data |
| facial hair: | no data |
| distinctive marks: | no data |
| other descriptive features: | no data |

*Round seal with the state emblem in the center and the inscription on the rim:*
"REGIONAL PROSECUTOR'S OFFICE IN GDYNIA"

*Oblong stamp:*
INTER[...]
I certify conformity of the extract
Gdynia, 30.11.2011

Paweł Bugajski
*/-/ illegible signature*

**Robert Zendran is suspected of the following:**

I.    on November 20, 1998 in Gdynia, acting jointly and in agreement with Andrzej Synowiec and Piotr Nagowski and another undetermined individual, having brought Dariusz Wolniak to a state of defenselessness by placing handcuffs on his wrists, and subsequently tying him to a tree in a forest with sackcloth band, he perpetrated theft of cash in total amount of PLN 300,300 to the detriment of Dariusz Wolniak, that is an offense under article 280 paragraph 1 of the Criminal Code,

II.    In the period from November 08, 1998 through November 20, 1998, at an undisclosed location, acting jointly and in agreement with Andrzej Synowiec and Piotr Nagowski and another undetermined individual he acquired a VW Passat of registration number PAL 0220 worth PLN 25,000 while based on accompanying circumstances he should have supposed that the vehicle was obtained as a result of burglary, thereby acting to the detriment of Zbigniew Ciszek,

    that is an offense under article 292 paragraph 1 of he Criminal Code

Date and file reference number of the decision on provisional arrest:
July 12, 2007, file reference number IX Kp 258/07

    All those who know the whereabouts of the sought are called on to notify the same to the nearest Police unit or prosecutor (article 280 paragraph 1 item 4 of the Code of Criminal Procedure).

    Warning is given that harboring the fugitive or aiding him in absconding carries a penalty of imprisonment for up to 5 years (article 239 paragraph 1 of the Criminal Code). Assurance is provided on maintenance of secrecy as to the identity of the person informing of the whereabouts of the fugitive (article 280 paragraph 2 of the Code of Criminal Procedure).

Enclosures:
1.   Extract of decision on provisional arrest
2.   Order of receipt in the nearest investigative detention facility

                          PROSECUTOR
                          Regional Prosecutor's Office
                          Beata Gurska, MA
                          */-/ illegible signature*

*Round seal with the state emblem in the center and the inscription on the rim:*
"REGIONAL PROSECUTOR'S OFFICE IN GDYNIA"

                          *Oblong stamp:*
                           INTERN
          I certify conformity of the extract
                 Gdynia, 30.11.2011
                  Paweł Bugajski
                 */-/ illegible signature*

*Oblong stamp:*
No. *handwritten:* 6704/12
The Ministry of Foreign Affairs
herewith proves that this document
complies with the laws applicable in Poland
Stamp duty collected
Warsaw

*Date stamp:* 26th September 2012

*(-) illegible signature*
*Oblong stamp:*
Monika Grabek
Counsel

*Round, official stamp with the national emblem of the Republic of Poland in the centre and the following inscription on the rim:* "Ministry of Foreign Affairs * 6 *"

*Oblong stamp:*
Stamp duty free
(Stamp Duty Act as of 16th November 2006
Journal of Laws No. 225, item 1635, article 2, clause 1, point 1).

---



REGIONAL PROSECUTOR'S OFFICE
10 Lutego 39
81-364 GDYNIA

File reference number 3 Ds. 80/07

## DECISION
### on searching for a suspect by means of an all-points bulletin

July 24, 2007

Beata Gurska - prosecutor of the Regional Prosecutor's Office in Gdynia
in the case against Robert Zendran
suspected of an offense under article 280 paragraph 1 of the Criminal Code and other
- by virtue of article 279 paragraph 1 of the Code of Criminal Procedure

### decided:

to order a search under an all-points bulletin for the absconding suspect Robert Zendran, as to whom on July 12, 2007 a decision on provisional arrest was issued.

## STATEMENT OF REASONS

The Regional Prosecutor's Office in Gdynia is supervising an investigation against Robert Zendran, suspected of perpetration of robbery on the person of Dariusz Wolniak on November 20, 1998 in Gdynia and theft of cash in total amount of 300,300.00 Polish zlotys to his detriment, that is an offense under article 280 paragraph 1 of the Criminal Code.

In view of the fact that the suspect Robert Zendran is absconding from law enforcement authorities, it has become necessary to suspend the proceedings and search for the mentioned under an all-points bulletin.

Considering the above it was proper to decide as herein above.

PROSECUTOR
Regional Prosecutor's Office
Beata Gurska, MA
/-/ illegible signature

**Disposition:**
Draft an all-points bulletin and send it out to the Police Headquarters in Kołobrzeg for the purpose of distribution by ...

PROSECUTOR
Regional Prosecutor's Office
Beata Gurska, MA
/-/ illegible signature

*Round seal with the state emblem in the center and the inscription on the rim:*
"REGIONAL PROSECUTOR'S OFFICE IN GDYNIA"

*Oblong stamp:*
JUNIOR REFERENDARY
I certify conformity of the extract

Gdynia, 26.07.2012
Paweł Bugajski
*/-/ illegible signature*

*Oblong stamp:*
No. *handwritten:* 6705/12
The Ministry of Foreign Affairs
herewith proves that this document
complies with the laws applicable in Poland
Stamp duty collected
Warsaw

*Date stamp:* 26th September 2012

*(-) illegible signature*
*Oblong stamp:*
Monika Grabek
Counsel

*Round, official stamp with the national emblem of the Republic of Poland in the centre and the following inscription on the rim:* "Ministry of Foreign Affairs  * 6 *"

*Oblong stamp:*
Stamp duty free
(Stamp Duty Act as of 16th November 2006
Journal of Laws No. 225, item 1635, article 2, clause 1, point 1).



*Copy of a photograph*

ROBERT ZENDRAN 08.03.1968

*Round seal with the state emblem in the center and the inscription on the rim:*
"REGIONAL PROSECUTOR'S OFFICE IN GDYNIA"

*Oblong stamp:*
INTERN
I certify conformity of the extract
Gdynia, 30.11.2011
Paweł Bugajski
*/-/ illegible signature*



**Excerpt from the Act of June 6, 1997- Criminal Code - Journal of Laws of 1997 number 88 item 553**

### Article 101 paragraph 1

An offence will cease to be punishable upon the expiration of the following periods from the time of its perpetration:

1) 30 years – if the deed is a crime of homicide;
2) 20 years – if the deed is another crime;
2a) 15 years – if the deed is the crime liable to imprisonment exceeding 5 years;
3) 10 years – if the deed is the crime liable to imprisonment exceeding 3 years;
4) 5 years – in case of other offences;

### Article 102

If proceedings against a person have been commenced within a period provided for by article 101 section 1 points 1-3 above, then the crime or offence committed by such person will cease to be punishable on expiry of 10 years, and in other cases on expiry of 5 years after the end of such a period.

### Article 280 paragraph 1

Any person who while stealing uses violence against another person or threatens immediate use of violence, or leads a person to a state of unconsciousness or defenselessness, is liable to a penalty of imprisonment for a period from 2 years up to 12 years.

### Article 292 paragraph 1

Any person who purchases or helps to sell, or receives or helps to conceal an object, concerning which, on the basis of the accompanying circumstances, he/she may and should suppose that the said object has been obtained by means of a prohibited act,

*Oblong stamp:*
I certify conformity of the copy with the original
GDAŃSK, date: 11.01.2012

*Oblong seal:*
Senior Clerk
*/-/ illegible signature*
Edyta Bluma, MA

*Round official stamp with the national emblem of the Republic of Poland in the centre and the following inscription on the rim:* "District Public Prosecutor's Office in Gdańsk * 2 *."

*Oblong stamp:*
No. *handwritten:* 6706/12
The Ministry of Foreign Affairs
herewith proves that this document
complies with the laws applicable in Poland
Stamp duty collected
Warsaw



*Date stamp:* 26th September 2012

*(-) illegible signature*
*Oblong stamp:*
Monika Grabek
Counsel

*Round, official stamp with the national emblem of the Republic of Poland in the centre and the following inscription on the rim:* "Ministry of Foreign Affairs  * 6 *"

*Oblong stamp:*
Stamp duty free
(Stamp Duty Act as of 16th November 2006
Journal of Laws No. 225, item 1635, article 2, clause 1, point 1).

**Repertory No. 1263/2012**
*I, the undersigned, Ryszard Pruszkowski, sworn translator of the English language entered on the list of sworn translators of the Minister of Justice hereby certify that the above text is a true and complete translation of the original Polish document.*
*Warsaw, October 15, 2012*