# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:16-MJ-5011-NAB |
| | ) | |
| ROBERT LUKASZ ZENDRAN, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S MOTION FOR DETENTION AND MEMORANDUM OF LAW IN SUPPORT

COME NOW Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Gilbert C. Sison, Assistant United States Attorney for said District, and moves for the detention of Robert Zendran ("Zendran") pending the hearing on the certification of extradition to Poland.

### I. INTRODUCTION.

The fugitive Zendran was arrested on January 28, 2016, pursuant to a warrant issued seeking the fugitive's extradition to Poland, pursuant to the Extradition Treaty between the United States of America and the Republic of Poland signed July 10, 1996, and the Agreement between the United States of America and the Republic of Poland on the application of the Extradition Treaty between the United States of America and the Republic of Poland signed July 10, 1996, pursuant to Article 3(2) of the Agreement on Extradition between the United States of America and the European Union signed at Washington June 25, 2003 (the "Agreement"), with Annex, signed June 9, 2006.

1

Authorities in Poland seek the extradition of Zendran to answer criminal charges, the underlying facts of which are more fully set forth in the Complaint filed in this matter. Specifically, Zendran is accused of violating, among other things, the following provisions of Poland's Criminal Code:

**Article 280 paragraph 1**

Any person who while stealing uses violence against another person or threatens immediate use of violence, or leads a person to a state of unconsciousness or defenselessness, is liable to a penalty of imprisonment for a period from 2 years up to 12 years.

**Article 292 paragraph 1**

Any person who purchases or helps to sell, or receives or helps to conceal an object, concerning which, on the basis of the accompanying circumstances, he/she may and should suppose that the said object has been obtained by means of a prohibited act, . . . .

Obviously, the aforementioned crimes are serious in nature and would qualify as serious crimes if committed in the United States.

II.   **APPLICABLE LAW.**

The federal statute governing extradition procedures in the United States pursuant to treaties with other nations, 18 U.S.C. §§ 3184 et seq., does not provide for bail. Further, an extradition proceeding is not a criminal case. *See Kamrin v. United States*, 725 F.2d 1225, 1227-28 (9th Cir. 1984); *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993). Consequently, the Bail Reform Act, Title 18 U.S.C. §§ 3141 et seq., and its criteria governing the allowance and the amount of bail in United States criminal cases do not apply in extradition matters. The Bail Reform Act applies only to "offenses" against the United States that are triable in United States courts. *See* 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2). The

fugitive Zendran is **not** charged with an "offense" within the meaning of 18 U.S.C. § 3156.[1]

Instead, Zendran is charged with a series of offenses committed against Poland. *See Matter of Extradition of Rouvier*, 839 F. Supp. 537, 539 (N.D. Ill. 1993); *Matter of Extradition of Sutton*, 898 F. Supp. 691, 694 (E.D. Mo. 1995).

Similarly, neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to international extradition proceedings.[2] Fed R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101 (d)(3). *See also Afanesjev v. Hurlburt*, 418 F.3d 1159, 1164-65 (11th Cir. 2005); *Melia v. United States*, 667 F.2d 300, 302 (2nd Cir. 1981); *Bovio v. United States*, 989 F.2d 255, 259 n.3 (7th Cir. 1993).

### A. A STRONG PRESUMPTION AGAINST BAIL GOVERNS IN AN INTERNATIONAL EXTRADITION PROCEEDING.

The overwhelming weight of authority supports the strong presumption against the granting of bail in international extradition cases. Both the United States Supreme Court and the federal courts of appeals have long held that bail should be granted in only the most unusual of circumstances.

In the landmark case *Wright v. Henkel*, 190 U.S. 40 (1903), the Supreme Court affirmed the detention without bail of a fugitive sought by Great Britain for defrauding a corporation of which he was a director. The United States argued in Wright that extradition courts were without power to allow bail because no statute provided for such power. *Id.* at 55. The Court stated that it was unwilling to hold that the circuit courts do not possess power with respect to admitting fugitives to bail other than as specifically vested by statute, but cautioned that " . . .

---

[1] The term "offense" for the purposes of Section 3141 is defined in 18 U.S.C. § 3156(a)(2) as "any criminal offense, other than an offense triable by court-martial, military commission. provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress. . ."

3

bail should not ordinarily be granted in cases of foreign extradition . . . ." *Id.* at 63.[2]

In establishing this presumption against bail, the Supreme Court in Wright explained that when a foreign government makes a proper request under a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

*Id.* at 62.

The reasons for this presumption against bail in international extradition cases are clear and compelling. First, it is necessary for the United States to meet its legal treaty obligations. A person sought for extradition already is an international fugitive from justice; it is reasonable to think that person would flee once alerted to the charges. Even if the person were not otherwise in flight, the fact of an impending extradition to a foreign country to face serious criminal charges, the outcome of which is uncertain, is itself a strong incentive to flee.

Further, the ability of the United States to deliver fugitives pursuant to extradition requests has significant international law implications. The international legal system depends wholly upon the respect of its members for the obligations into which they freely enter. When, as here, the Government of Israel meets the conditions of the treaty, the United States is obliged to deliver the fugitive. It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that

---

[2] Although the issue before the Court is the fugitive's request for bond, it also should be noted that neither the prohibitions against hearsay, *Simmons v. Braun,* 627 F.2d 635, 636 (2nd Cir. 1980), nor the Sixth Amendment's guarantee to a speedy trial, *Jhirad v. Ferrandina,* 536 F.2d 478, 485 n. 9 (2nd Cir. 1976), cert. denied, 429 U.S. 833 (1976), reh. denied, 429 U.S. 988 (1976), apply to international extradition proceedings.

4

other nations meet their reciprocal obligations to the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond. *See Wright*, 190 U.S. at 62. *See also United States v. Leitner*, 784 F.2d 159, 160-61 (2d Cir. 1986)(the Government has an overriding foreign relations interest in complying with treaty obligations and producing extradited persons).

### B. THE FUGITIVE MUST ESTABLISH "SPECIAL CIRCUMSTANCES" AND MUST NOT POSE A RISK OF FLIGHT FOR THE COURT TO CONSIDER THE QUESTION OF BAIL.

In light of the strong presumption against bail established in Wright, the federal courts have uniformly held that bail shall not be granted except under "special circumstances." *See United States v. Leitner*, 784 F.2d at 160 (bail in extradition cases should be granted "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory"), (*quoting In re Mitchell*, 171 F. 289 (S.D.N.Y. 1909)(Hand, J.); *Salerno v. United States*, 878 F.2d 317, 318 (9th Cir. 1989)("only 'special circumstances' will justify bail"); *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991)("in a case involving foreign extradition, bail should not be granted absent special circumstances"). Moreover, the burden is on the fugitive to establish the existence of special circumstances warranting the granting of bail. *See Salerno*, 878 F.2d at 317-318; *Leitner*, 784 F.2d at 160.

Notably, the courts have determined that certain circumstances are not "special" and do not justify the release of a fugitive during extradition proceedings. Foremost, the absence of flight risk is consistently held not to constitute a special circumstance. Rather, the absence of a risk of flight and a finding of special circumstances are each independent requirements for bail in an extradition case. Therefore, to qualify for bail, a fugitive is required to make a two-part showing that: (1) he or she is not a flight risk and (2) that "special circumstances" exist warranting the granting of bail. *See, e.g., United States v. Ramnath*, 533 F. Supp. 2d 662, 665 (E.D. Tex. 2008); *In re Extradition of Molnar*, 182 F. Supp. 2d 682, 687 (N.D. Ill 2002); I*n re*

*Extradition of Nacif-Borge*, 829 F.Supp. 1210, 1215 (D. Nev. 1993); *In re Extradition of Chapman*, 459 F.Supp.2d 1024, 1026-27 (D. Haw. 2006); *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1035-36 (C.D. Cal. 2006). The absence of flight risk is consistently held to be a requirement separate from the special circumstances test.

To illustrate, in *Leitner*, the fugitive was a United States citizen, who had been arrested in Israel and charged with acts of terrorism against Arabs. Israeli authorities freed Leitner on bail after he agreed to cooperate with them. After receiving death threats, Leitner fled to his home in the United States and lived openly under his own name for a year and a half. He attended law school, drove a taxi under his own name, and lived with or frequently visited his parents. Based upon the foregoing, the Magistrate Judge found that Leitner did not pose a flight risk. The Second Circuit, in affirming the district court's reversal of the grant of bail, held that the lack of flight risk was not a "special circumstance." 784 F.2d at 161. *See also Salerno*, 878 F.2d at 318 (flight risk "is not a criteria for release in an extradition case"); *Matter of Russell*, 805 F.2d 1215, 1216 (5th Cir.)("[b]eing a tolerable bail risk is not in and of itself a special circumstance"); *United States v. Williams*, 611 F.2d 914, 915 (1st Cir. 1979)("even applicant's arguable acceptability as a tolerable bail risk" is not a special circumstance). Instead, absence of flight risk is an independent and additional condition that must be demonstrated to warrant bail.[3] Similarly, findings regarding danger to a community both here and abroad would preclude bail,

---

[3] Courts differ in the order in which they consider flight risk and special circumstances. Some courts evaluate potential flight risk before proceeding to any special circumstances analysis. *See,* e.*g., Extradition of Molnar*, 182 F. Supp. 2d at 687; *United States v. Taitz*, 130 F.R.D., 442, 445 (S.D. Cal. 1190). Other courts first determine special circumstances and then consider the potential for flight. *See, e.g., Extradition of Morales*, 906 F. Supp. at 1373; *Extradition of Nacif-Borge*, 829 F.Supp. at 1216; *Extradition of Mainero*, 950 F. Supp. 290, 295 (S.D. Cal. 1996). Regardless of the order of consideration, case authority is clear that both special circumstances must be demonstrated **and** lack of flight risk must be established to grant bail. Practical considerations and judicial economy suggest determinations as to flight risk and danger to the community be made first.

even in the face of arguably special circumstances. *See In re Extradition of Gonzalez*, 52 F.Supp.2d 725, 735 (W.D. La. 1999); *Ramnath*, 533 F. Supp. 2d at 665; *Extradition of Molnar*, 182 F. Supp. 2d at 687; *Extradition of Nacif-Borge*, 829 F.Supp. at 1215; *Extradition of Santos*, 473 F. Supp. 2d at 1035-36.[4]

### III. THE FUGITIVE POSES A RISK OF FLIGHT AND CANNOT ESTABLISH SPECIAL CIRCUMSTANCES.

The fugitive in this case cannot meet his burden and the Court should deny any request for bail.

A fugitive charged with crimes in another country is already by definition in flight or deliberately absent from that jurisdiction. Here the strong presumption against bail is supported by defendant's alleged criminal behavior in Poland. Hence, further flight from the United States to yet another country or to an underground location in the United States is a reasonable assumption.

Because Zendran is a risk of flight, the Court need go no further in order to detain him pending extradition. However, even if Zendran were not a flight risk there must be an affirmative showing of special circumstances before he would be eligible for bond.

Courts have declined to find "special circumstances" based on: (1) the need to consult

---

[4] In a decision in a U.S. criminal case, the Ninth Circuit rejected the contention that under the Bail Reform Act a court must limit its evaluation of a defendant's potential danger to a geographic location within the United States. *See United States v. Hir*, 517 F.3d 1081, 1088-89 (9th Cir. 2008). Instead, the court held that, if the defendant is charged with a crime punishable under U.S. law, the court may consider the danger posed to a foreign community, reasoning that the effect of the alleged offense occurs abroad. *Id.* In the international extradition context, where the Bail Reform Act does not apply, there is an even greater justification for extending consideration of the threat that a fugitive might pose to a community beyond the U.S. borders. Requests by other countries for extradition of a fugitive by definition comprise violations of foreign law having a primary adverse effect on the foreign community. If a court, in making its danger to the community determination, were limited to considering only geographic areas located in the United States, the court would be forced to ignore the potential danger a fugitive's release could be in a foreign location where crime was committed.

with one's attorney and/or participate in pending litigation, *In the Matter of Extradition of Smyth*, 976 F.2d 1535 (9th Cir. 1992); (2) the complexity of the pending litigation, *Matter of Extradition of Russell*, 805 F.2d 1215, 1217 (5th Cir. 1986); (3) health issues including discomfort, dietary needs, or associated health concerns while incarcerated, *See In re Klein*, 46 F.2d 85 (S.D.N.Y. 1930); *Matter of Extradition of Rouvier*, 839 F. Supp. 537, 541 n.9 (N.D. Ill. 1993); *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1216-17 (D. Nev. 1993); (4) United States citizenship or pendency of naturalization proceedings, *In re Extradition of Orozco*, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003); (5) political or professional status, *Borodin v. Ashcroft*, 136 F. Supp. 2d 125, 131 (E.D.N.Y. 2001); *In re Extradition of Heilbronn*, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991); (6) the availability of electronic monitoring, *Matter of Extradition of Rovelli*, 977 F. Supp. 566, 569 (D. Conn. 1997); *United States v. Hills*, 765 F. Supp. 381, 389 (E.D. Mich. 1991); (7) the fugitive's character, past conduct, and/or ties to the community, *Matter of Extradition of Sidali*, 868 F. Supp. 656 (D.N.J. 1994); (8) ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, *In re Extradition of Heilbronn*, 773 F. Supp. 1576 (W.D. Mich. 1991); and (9) availability of bail for the same offense in the requesting country, *In re Extradition of Siegmund*, 887 F. Supp. 1383, 1386-87 (D. Nev. 1995).

While in certain exceptional cases some of the above may have been deemed a special circumstance, for the most part, where a court determines special circumstances to exist it is generally based on a confluence of factors, as opposed to any single consideration. Such findings are very case specific and within the discretion of the court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

**IV.    CONCLUSION.**

In sum, Zendran is a flight risk. He cannot demonstrate that "special circumstances" exist which would justify bond in his case. Finally, the fugitive's release on bail would have negative implications for U.S. foreign policy in cases where the United States seeks extradition of fugitives from Poland. Based on the foregoing, the United States requests that the fugitive's request for bail be denied.

Dated:  January 28, 2016.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

/s/Gilbert C. Sison
GILBERT C. SISON, #52346MO
Assistant United States Attorney
111 S. 10th Street, Room 20.333
St. Louis, MO 63102
Telephone:  (314) 539-2200
E-mail:  gilbert.sison@usdoj.gov