UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF THE            )
EXTRADITION OF                  )       No.     4:16 MJ 5011 NAB
ROBERT ZENDRAN TO POLAND        )

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR DETENTION**

Comes now the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and John J. Ware, Assistant United States Attorney for said District and replies to Robert Zendran's (Zendran) response to the motion for detention and states as follows;

Zendran raises three reasons why the strong presumption against bail in extradition cases should be ignored in his case.  None of the arguments raised by Zendran rebuts the presumption.

As an initial matter, Zendran claims that the arrest warrant issued by Polish authorities was a "limited" warrant valid only for 14 days after the date of apprehension.  Defendant posits that this "limited" warrant is evidence that he has not yet been actually charged by Polish authorities and thus the extradition request is invalid.

While this argument is one most appropriately made for the extradition hearing itself, defendant alleges that it constitutes a special circumstance for bail determination because it comprises a substantive claim which would defeat extradition.  Unfortunately for Zendran, it is not.

"Every court that has addressed this issue has concluded that a formal charging document is not required [as a condition precedent for extradition]…".  Kaiser v. Rutherford, 827 F. Supp. 832, 834 (D.D.C. 1993) (Citations omitted)  See Emami v. U.S. Dist. Court of the N. Dist. Of

Cal., 834 F.2d 1444-49 (9th Cir. 1987); *See also* Matter of Assarsson, 635 F.2d 1237, 1242 (7th Cir. 1980) (hereinafter "Assarsson I") (rejecting the argument that a lack of formal charges precludes extradition because "[t]he filing of formal charges is not stated anywhere [in the treaty] as a prerequisite to extradition"); Mattter of Assarsson, 687 F.2d 1157, 1160 (8th Cir. 1982) (hereinafter "Assarsson II") (holding that the court may not review a magistrate's determination that charges were filed where "[t]he filing of formal charges is not stated anywhere as a prerequisite to extradition").

Instead, courts have generally held that a treaty's "charge" requirement is satisfied where the requesting nation "intends to prosecute" him or her. *See, e.g.*, Assarsson I, 635 F.2d at 1242; Borodin v. Ashcroft, 136 F. Supp. 2d 125, 130 (E.D.N.Y. 2001) ("[T]he 'charge' requirement is satisfied by a requesting nation's intent to prosecute as evidenced by the record."); In re La Salvia, No. 84 Cr. Misc. 1, 1986 WL 1436, at *6 (S.D.N.Y. Jan. 31, 1986) ("[T]he reference to 'persons . . . charged' in [the treaty] . . . is a generic term referring to those persons whose extradition is sought *so that they may be brought to trial*.") (emphasis added). In these cases, evidence of an intent to prosecute is all that is needed to satisfy the "charge" requirement, even in the absence of formal charging documents, warrants, and/or indictments. *See also* In re Extradition of Lehming, 951 F. Supp. 505, 512 (D. Del. 1996).

Both the Seventh and Eighth Circuits have construed an extradition treaty containing nearly identical "charge requirement" language to not require a formal indictment or other charging documents to proceed with extradition. In Assarsson I, the petitioner argued that the lack of a summons or other "formal charge" against him precluded extradition to Sweden under the terms of the applicable extradition treaty. 635 F.2d at 1239. The treaty allowed for the extradition of "persons . . . who have been charged with or convicted of any of the offenses

specified in Article II of this Convention." Id. at 1242 (emphasis added).  However, because the treaty "[did] not state 'extradition may only be granted for those offenses for which formal charges have been filed against the person sought' or anything remotely akin to that," the Seventh Circuit rejected petitioner's argument, finding that the word "charge" was "used in the generic sense only to indicate 'accused.'" 635 F.2d at 1242-44.  Additionally, the Eighth Circuit adopted the Seventh Circuit's holding in a case involving the brother of the petitioner in Assarsson I, holding that where "[t]he filing of formal charges is not stated anywhere as a prerequisite to extradition . . ., we may not review the magistrate's determination that [the extradite] was charged under the terms of the treaty."  Assarsson II, 687 F.2d at 1160 (quoting Assarsson I, 635 F.2d at 1242).  See Sacirbey v. Guccione, 589 F.3d 52, 64-65 (2d Cir. 2009).

The U.S.-Poland Extradition Treaty does not require an indictment or other "formal charge" as a prerequisite to extradition.  The treaty provides in relevant part that "persons whom the authorities in the requesting state seek for prosecution" in addition to those found guilty may be extradited.  Convention Relating to Extradition, U.S.-Pol., art. I, 1996 (hereinafter "Extradition Treaty"); *see also* Agreement Amending the Extradition Treaty, June 9, 2006, (hereinafter "Amendments to Extradition Treaty").  Article 9.3 (Requests for extradition for person sought for prosecution supported by arrest warrant; if any).  Like Assarsson I and Assarsson II, where the Seventh and Eighth Circuits refused to read a "formal charge" requirement into an extradition treaty whose plain language did not contain one, here this Court should decline to read a "formal charge" requirement into a treaty with nearly identical language.[1]  The relevant inquiry is not whether a "formal charge" has been made against the defendant; instead, it is the country's intent to prosecute the defendant upon extradition.

3

In this case, there is most-likely a valid charging document and without doubt an intent by Polish authorities to prosecute. As such, Zendran's first allegation has no merit and thus does not translate into a special circumstance.

Zendran's second argument for bail is to attack the sufficiency of evidence underlying the charge in Poland. Once again, that argument is most appropriately made at the extradition hearing not at this stage of the proceedings.[2] It is clearly a premature argument at a bond hearing. *In re Extradition of Kappor*, 2011 WL 2296535 p4 (E.D.N.Y. 2011). Even those courts that have considered success on the merits as a special circumstance have required the fugitive to establish a "high probability" of success to warrant bail. In re Extradition of Nacif-Borge, 829 F. Supp 1210, 1216 (D. Nev. 1993) (no high probability of success); United States v. Kin Hong, 83 F.3d 523, 524-25 (1st Cir. 1996) (same); Matter of Extradition of Rouvier, 839 F. Supp 537 (N.D. Ill. 1993) (same).

Zendran's claim that there is paucity of existing evidence establishing his guilt is made in complete disregard that his fellow conspirators confessed to the crimes and Zendran's role in them. Further, Zendran's claim that there is no evidence establishing that he "stole the vehicle" equates to likely success on the merits completely disregards that he is charged not with stealing the vehicle, but receiving it after it was stolen. Zendran simply hasn't, and can't, establish such a high probability of success on the merits to confront a special circumstance for bail purposes.

Finally, Zendran asserts that the delay by the Polish authorities in requesting extradition and delay in the processing of the extradition by the United States constitutes a special

---

[1] The treaty being construed by the Assarsson courts provided for extradition of "persons found in its territory who have been charged with or convicted of any of the offenses specified in Article II of this Convention . . . ." Convention on Extradition, U.S.-Swed., Oct. 24, 1961, 14 U.S.T. 1845.

[2] And even at that, in the most limited way, See Government's Memorandum of Law in Support of Extradition p. 7, (court simply determines if there is probable cause that defendant committed the offense)

circumstance warranting bail.  On a strictly factual level, Zendran's assertion that there has been delay, not of his own making, is not true.  While the crimes occurred in November 1998, Polish authorities apparently did not learn of Zendran's involvement until February 2007.  Zendran had fled Poland well before.  He then made his discovery incrementally more difficult by not only relocating to America, but also by changing his name and shutting off communication with his family in Poland.  The Polish Government's completed request for extradition occurred in January 2014.  The Polish suspected Zendran was in the United States but did not know his whereabouts or his changed name.  That authorities in this country took 2 years to locate and arrest defendant, given these circumstances, is not attributable delay.

This is in direct contrast to the situation in Wroclawski v. United States, 634 F. Supp 2d 1003 (D. Ariz. 2009), the case cited by Zendran in support of his delay argument.  In Wroclawski, the Polish government did not seek extradition until 12 years after Wroclawski was charged "despite the fact that [he] lived openly in the United States and made no effort to hide his whereabouts."  While the Polish authorities' delay in Wroclawski did constitute a special circumstance, they have acted expeditiously in this case.  Defendant's claim that the cases are similar is fanciful.

## CONCLUSION

For all of the foregoing reasons, and those outlined in the Government's Motion for Detention, the Government believes that Mr. Zendran should be detained pending his extradition.

    Respectfully submitted,

    RICHARD G. CALLAHAN
    United States Attorney

    */s/ John J. Ware*
    JOHN J. WARE, #40880MO
    Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon:

**Joel Schwartz**
Attorney at Law
(Attorney for Zendran)


                                                */s/ John J. Ware*
                                              Assistant United States Attorney