UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE ) | | |
| EXTRADITION OF ) | No. | 4:16 MJ 5011 NAB |
| ROBERT ZENDRAN TO POLAND ) | | |

**GOVERNMENT'S REPLY TO ZENDRAN'S OPPOSITION TO REQUEST FOR EXTRADITION**

Comes now the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and John J. Ware, Assistant United States Attorney for said District and replies to Robert Zendran's (Zendran) opposition to the Request for Extradition and in support states as follows:

**I.    OVERVIEW**

Zendran opposes extradition on two grounds; first, that he is not subject to extradition because he has not been charged with an offense in Poland and thus the terms of the extradition treaty do not apply, and second, there is insufficient probable cause alleged in the complaint to warrant extradition. Zendran raised these arguments in his request for bond and the Government replied to them at that time, so some of this reply will be repetitive. Additionally, however, Zendran, for the first time, appears to be contesting identity, which will also be addressed.

**II.    EXTRADITION TREATY APPLIES TO ZENDRAN**

Zendran claims that the warrant issued for his arrest (which authorizes 14 days of provisional arrest from the date of apprehension) is not a charge but is the equivalent of a "wanted" for questioning. Thus, he argues, the Extradition Treaty is inapplicable because he has not been charged. Zendran's argument fails, however, because the arrest warrant is akin to a

"complaint," not a "wanted" and in any event, a formal charge is not a prerequisite to extradition under the Treaty.

"Every court that has addressed this issue has concluded that a formal charging document is not required [as a condition precedent for extradition]…". Kaiser v. Rutherford, 827 F.Supp. 832, 834 (D.D.C. 1993) (Citations omitted)  See Emami v. U.S. Dist. Court of the N. Dist. Of Cal., 834 F.2d 1444-49 (9th Cir. 1987); See also Matter of Assarsson, 635 F.2d 1237, 1242 (7th Cir. 1980) (hereinafter "Assarsson I") (rejecting the argument that a lack of formal charges precludes extradition because "[t]he filing of formal charges is not stated anywhere [in the treaty] as a prerequisite to extradition"); Mattter of Assarsson, 687 F.2d 1157, 1160 (8th Cir. 1982) (hereinafter "Assarsson II") (holding that the court may not review a magistrate's determination that charges were filed where "[t]he filing of formal charges is not stated anywhere as a prerequisite to extradition").

Instead, courts have generally held that a treaty's "charge" requirement is satisfied where the requesting nation "intends to prosecute" him or her. *See, e.g.*, Assarsson I, 635 F.2d at 1242; Borodin v. Ashcroft, 136 F.Supp. 2d 125, 130 (E.D.N.Y. 2001) ("[T]he 'charge' requirement is satisfied by a requesting nation's intent to prosecute as evidenced by the record."); In re La Salvia, No. 84 Cr. Misc. 1, 1986 WL 1436, at *6 (S.D.N.Y. Jan. 31, 1986) ("[T]he reference to 'persons . . . charged' in [the treaty] . . . is a generic term referring to those persons whose extradition is sought *so that they may be brought to trial*.") (emphasis added).  In these cases, evidence of an intent to prosecute is all that is needed to satisfy the "charge" requirement, even in the absence of formal charging documents, warrants, and/or indictments. *See also* In re Extradition of Lehming, 951 F.Supp. 505, 512 (D. Del. 1996).

Both the Seventh and Eighth Circuits have construed an extradition treaty containing nearly identical "charge requirement" language to not require a formal indictment or other charging documents to proceed with extradition. In Assarsson I, the petitioner argued that the lack of a summons or other "formal charge" against him precluded extradition to Sweden under the terms of the applicable extradition treaty. 635 F.2d at 1239. The treaty allowed for the extradition of "persons . . . who have been charged with or convicted of any of the offenses specified in Article II of this Convention." Id. at 1242 (emphasis added). However, because the treaty "[did] not state 'extradition may only be granted for those offenses for which formal charges have been filed against the person sought' or anything remotely akin to that," the Seventh Circuit rejected petitioner's argument, finding that the word "charge" was "used in the generic sense only to indicate 'accused.'" 635 F.2d at 1242-44. Additionally, the Eighth Circuit adopted the Seventh Circuit's holding in a case involving the brother of the petitioner in Assarsson I, holding that where "[t]he filing of formal charges is not stated anywhere as a prerequisite to extradition . . ., we may not review the magistrate's determination that [the extradite] was charged under the terms of the treaty." Assarsson II, 687 F.2d at 1160 (quoting Assarsson I, 635 F.2d at 1242). See Sacirbey v. Guccione, 589 F.3d 52, 64-65 (2d Cir. 2009).

The U.S.-Poland Extradition Treaty does not require an indictment or other "formal charge" as a prerequisite to extradition. The treaty provides in relevant part that "persons whom the authorities in the requesting state seek for prosecution" in addition to those found guilty may be extradited. Convention Relating to Extradition, U.S.-Pol., art. I, 1996 (hereinafter "Extradition Treaty"); *see also* Agreement Amending the Extradition Treaty, June 9, 2006, (hereinafter "Amendments to Extradition Treaty"). Article 9.3 (Requests for extradition for person sought for prosecution supported by arrest warrant; if any). Like Assarsson I and

Assarsson II, where the Seventh and Eighth Circuits refused to read a "formal charge" requirement into an extradition treaty whose plain language did not contain one, here this Court should decline to read a "formal charge" requirement into a treaty with nearly identical language.[1]

### III.     THE COMPLAINT CONTAINS SUFFICIENT PROBABLE CAUSE

Zendran alleges that the statements of his two accomplices that implicate him are inconsistent, therefore not reliable, and thus fail to establish probable cause for extradition.

Probable cause determinations in extradition hearings "can be based entirely on authenticated documentary evidence and/or written statements by foreign prosecutors or judges summarizing the evidence expected to be used." In re Extradition of Breyer, 32 F.Supp. 3d 574, 583 (E.D. Penn. 2014). "[U]nder the general rule of non-contradiction, the accused in an extradition hearing has no right to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains away that proof or completely rebuts the existence of probable cause." In re Extradition of Vargas, 978 F.Supp. 2d 734, 748 (S.D. Tex. 2013). "An airtight narrative of the events surrounding a crime is not a precondition for granting extradition." In re Rodriguez Ortiz, 444 F.Supp. 2d 876, 891 (N.D. Ill 2006). Issues related to conflicting witness testimony are properly reserved for eventual trial in the requesting country. Id.

Thus, as an initial matter, the inquiring into alleged inconsistencies is not appropriate in an extradition hearing. However, most, if not all, of the claimed inconsistencies by Zendran are simply misreadings by Zendran. For example, Zendran claims that Nagowski and Synowiec

---

[1] The treaty being construed by the Assarsson courts provided for extradition of "persons found in its territory who have been charged with or convicted of any of the offenses specified in Article II of this Convention . . . ." Convention on Extradition, U.S.-Swed., Oct. 24, 1961, 14 U.S.T. 1845.

describe two different places where they pick up the VW Passat; Nagowski at a garage outside Pila and Synowiec in Kolobrzeg.  However, what Synowiec actually said was "the VW Passat vehicle was parked in Kolobrzeg outside the "Scanpol" hotel.  Zendran brought the car in the morning to his workshop . . ."  Synowiec does not say they pick up the VW Passat in Kolobrzeg.  Thus, Nagowski's and Synowiec's statements are not inconsistent.

Nor are the statements about Zendran's activity in driving to Gdynia.  Synowiec says "Zendran was to lead them to Gdynia in his Nissan Primera, but they lost each other from sight and they drove there alone."  Nagowski says "After changing into the uniforms, the trio (Nagowski, Zynowiec, and Jasiu) got into the VW Passat.  [Nagowski] explained that Zendran followed them in his car."  These are not mutually exclusive statements.

As a final example, Zendran asserts that Nagowski ditched the VW Passat after the robbery but that "Synowiec, on the other hand, states that Zendran is the one to dispose of the vehicle."  However, the undersigned is unable to locate such a statement by Synowiec.  In short, Zendran's claim of inconsistency is simply wishful thinking and does not impact the reliability of his accomplice's statements.

In fact, the statements provided by Nagowski and Synowiec, summarized by the Polish prosecutor, bear several indicia of reliability and are therefore sufficient to support probable cause.  First, they are self-incriminating.  Mainero v. Gregg, 164 F.3d 1199, 1206 (9th Cir. 1999) (self-incriminating statements of accomplices are sufficient to establish probable cause in extradition hearing).  Second, the statements of Nagowski and Synowiec are consistent on the planning and execution of the robbery.  In re Extradition of Santos, 795 F.Supp. 2d 966, 979 (C.D. Cal. 2011) (overall consistency of two accomplices' testimony regarding accused's involvement in crime sufficient for probable cause finding despite some factual discrepancies).

5

Third, their statements corroborate known facts of the crime.  Fourth, Zendran fled the country after the robbery.  Id. Citing Curreri v. Vice, 77 F.2d 130, 133 (9th Cir. 1935) (accused's flight after offense corroborates testimony of accomplice as to accused's participation in crime). Finally, after fleeing, Zendran changed his name.  Esposito v. Adams, 700 F.Supp. 1470, 1477 (N.D. Ill. 1988) (change of name permissible inference of guilt in extradition hearing).  Thus, despite Zendran's claims to the contrary, there is sufficient reliability in the witnesses' statements to find probable cause for extradition.

## IV.    IDENTITY

Zendran apparently is now contesting identity.  In particular, Zendran questions the warrant for arrest, which contains no descriptives, and whether it was his photograph that constituted the photographic lineup presented to the witnesses and not someone else's.

"The Government need only make a prima facie case to establish identification. Numerous cases establish that identification in an extradition proceeding requires only a threshold showing of probable cause."  Matter of Extradition of Demjanjuk, 612 F.Supp. 544, 548 (N.D. Ohio 1985).  "Extensive evidentiary inquiry 'as to identity' is a matter for exploration during the trial in [the requesting country] and not . . . during the extradition hearing."  Assarsson at 1245.

Identity for extradition purposes can be proved in numerous ways.  Photographic proof has long been recognized as an acceptable method.  Glucksman v. Henkel 221 U.S. 508, 513 (1911).[2]  The judge conducting the hearing may determine that the person arrested is the same as that in the photograph provided by the requesting country.  Manta v. Chertoff, 518 F.3d 1134, 1143 (9th Cir. 2008).  Documents associated with the accused that confirm birthdate, place of

---

[2] And, incidentally, far more preferable than descriptors on the arrest warrant as Justice Holmes noted in the opinion, with his usual pithy, describing the Russian judge's descriptors sent with the extradition request as "worthless, as such descriptions generally are."

birth, and relatives are sufficient to establish identity.  In re Extradition of D'Amico, 177 F.Supp. 648, 652 (S.D.N.Y. 1959).  See Noel v. United States, 12 F.Supp. 2d 1300, 1304 (M.D. Fla. 1998).  Matching fingerprints are as well.  Abu Eain v. Adams, 529 F.Supp. 685, 689 (N.D. Ill. 1980).

     In this case, the biographics of Zendran match that of the accused.  In the process of naturalizing, the accused listed the same birthdate, place of birth, and parents' names as Zendran's.  He applied for citizenship under the name Robert Zendran, changing his name to Bob Kolberg at the time of naturalization.  Additionally, the extradition request contains a color photograph of Zendran, and although somewhat dated, the court can see for itself that it is a picture of the accused, albeit a younger version.  Under these circumstances, there is probable cause to believe the accused is Zendran.

                                                   Respectfully submitted,

                                                   RICHARD G. CALLAHAN
                                                   United States Attorney

                                                  /s/ John J. Ware
                                                 JOHN J. WARE, #40880MO
                                                 Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon:

**Joel Schwartz**
Attorney at Law
(Attorney for Zendran)

                                                */s/ John J. Ware*
                                            Assistant United States Attorney